# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **A.N.-1**

**No. 16-0477** (Cabell County 14-JA-251)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.N.-2, by counsel Alvie E. Qualls II, appeals the Circuit Court of Cabell County's April 4, 2016, order terminating his parental rights to two-year-old A.N.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Gardner Estep, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court (1) erred in proceeding to the adjudicatory and dispositional hearings when there were no allegations against him in the abuse and neglect petition; (2) erred in adjudicating him on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; (3) erred in terminating his parental rights on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; and (4) violated his substantive and procedural due process rights under the West Virginia Constitution.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and the child share the same initials, we refer to the child as A.N.-1 and petitioner as A.N.-2 in this memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

In November of 2014, the DHHR filed an abuse and neglect petition against petitioner and the child's mother, who were both named as adult respondents therein. As to petitioner, the DHHR stated in its petition that it "believes the circumstances of the Respondents' care of the minor child constitutes [sic] abuse and/or neglect, as those terms are defined in W.Va. Code § 49-1-3." Petitioner's address was noted as an incarceration facility in the State of Michigan. The DHHR stated in the petition that one of its workers informed petitioner on November 11, 2014, "that there would be allegations for neglect against him due to the fact that he is in jail and cannot provide for or take care of the respondent child."

Shortly thereafter, the circuit court held a preliminary hearing. Petitioner was not present in person at that hearing, but he was represented by counsel, who acknowledged that petitioner remained incarcerated at that time. Petitioner was scheduled for parole in approximately January of 2015. Petitioner's counsel and the circuit court discussed the means by which petitioner could appear for the adjudicatory hearing, either in person, by teleconference, or by videoconference. The matter was scheduled for adjudication.

In December of 2014, the circuit court convened an adjudicatory hearing. Petitioner appeared by teleconference and by counsel. At that time, petitioner moved to continue the adjudicatory hearing because he was scheduled to be released in January of 2015 and wished to appear in person. The circuit court granted petitioner's motion and re-scheduled the adjudicatory hearing for February of 2015.

In January of 2015, petitioner filed his verified response to the petition. In his response, petitioner admitted that he was incarcerated as alleged in the petition, but he claimed to have been recently released on parole. In February of 2015, the circuit court held the re-scheduled adjudicatory hearing. Petitioner did not appear in person, but was represented by counsel. Due to petitioner's absence, the circuit court re-scheduled the adjudicatory hearing for April of 2015.

In April of 2015, the circuit court again convened the re-scheduled adjudicatory hearing. Petitioner did not appear in person, but was represented by counsel. It was revealed at that hearing that petitioner had been arrested on new felony crimes in the State of Michigan (reportedly, accessory after the fact to murder; felon in possession of a firearm; and habitual offender). It was further revealed that due to the new criminal charges petitioner's parole was revoked and no bond was set. Again, the circuit court re-scheduled the adjudicatory hearing.

In July, September, and November of 2015, the circuit court re-scheduled the adjudicatory hearing three more times when petitioner failed to appear in person due to his criminal charges in the State of Michigan. Petitioner remained incarcerated throughout that period of time. The hearing was re-scheduled for a final time to February of 2016. In mid-January of 2016, petitioner (who remained incarcerated) moved to continue the February of 2016 hearing on the basis that he had a conflict with his criminal proceedings that prevented his appearance even by teleconference or videoconference at these abuse and neglect proceedings.

The circuit court refused to continue the hearings scheduled for February of 2016 and proceeded to final adjudication and, ultimately, disposition. Petitioner was still incarcerated in the State of Michigan at the time of those hearings, but he appeared by counsel. At the outset of

those hearings, the circuit court referenced petitioner's "abandonment" of the child. Immediately upon doing so, petitioner's counsel argued that "abandonment" was not alleged in the petition, and the circuit court corrected its reference to "abandonment" as to the basis for abuse and neglect allegations. Thereafter, the following exchange occurred between petitioner's counsel and the circuit court:

Mr. Qualls [petitioner's counsel]: Let me just note on behalf of [petitioner] . . . an objection under the provisions of [sic] abandonment was not, I believe, alleged.

The Court: I am not saying that is going to be the basis, I thought it was.

. . . .

The Court: You know, [petitioner] was looking at parole and then he got arrested and convicted of another felony, didn't he?

Mr. Qualls: That is correct, Your Honor.

The circuit court heard evidence that petitioner was incarcerated for the majority of the child's life and had provided no financial support to the child.

At the conclusion of those hearings, the circuit court made references to petitioner's felony crime/charges. The circuit court orally referenced petitioner's incarceration for a "felony conviction," and, in its final written order, the circuit court stated that petitioner was "a convicted felon" who was on parole "when he committed a new felony offense" and had a "pending felony charge." In that final written order, the circuit court found that petitioner continued incarceration rendered him "unable to have any involvement in the life of [the child] or to comply with the conditions of a family case plan." Therefore, the circuit court concluded that petitioner "emotionally and financially abused [the child]." Thereafter, the circuit court found that termination of petitioner's parental rights was in the child's best interests; that there was no alternative to termination that could ensure the child's physical and emotional well-being; and that there was no indication that the conditions of neglect could be corrected in the near future. As such, the circuit court terminated petitioner's parental rights to the child. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply

3

because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

As noted above, petitioner raises four assignments of error on appeal: (1) that the circuit court erred in proceeding to the adjudicatory and dispositional hearings when there were no allegations against him in the abuse and neglect petition; (2) that the circuit court erred in adjudicating him on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; (3) that the circuit court erred in terminating his parental rights on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; and (4) that the circuit court violated his substantive and procedural due process rights under the West Virginia Constitution for (A) terminating his parental rights when there were no allegations against him in the abuse and neglect petition and (B) failing to continue the adjudicatory and dispositional hearings when petitioner was unable to attend due to this criminal proceedings in the State of Michigan.[3]

Petitioner correctly notes that parents have a fundamental constitutional right to the custody of their children. *See* Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)

---

[3]Petitioner argues in passing that the circuit court erroneously found that he was convicted of a felony charge during the pendency of these proceedings. For this claim, petitioner cites only to the circuit court's oral statements at the hearings held in February of 2016. We have explained that "where a circuit court's written order conflicts with its oral statement, the written order controls." *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 106-107 n. 5, 459 S.E.2d 374, 383-384 n. 5 (1995). It is uncontested that the circuit court accurately reflected petitioner's criminal history and incarceration status in its final written order, which stated only that petitioner was a "convicted felon" who had been re-incarcerated for a "pending felony charge" based on a new "felony offense." Therefore, to the extent petitioner argues that the circuit court's statements regarding his conviction status constitute error, we do not agree. The written order is correct in this regard. Moreover, petitioner's counsel affirmed the circuit court's statement regarding petitioner's conviction at the hearings held in February of 2016 and no objection was raised to the circuit court's statements at that time. We have often explained that the requirement for a party to raise or waive an objection is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989).

4

(holding that parental custody of minor child is fundamental personal liberty protected and guaranteed by Due Process Clauses of West Virginia and United States Constitutions). However, we have also held that, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). Petitioner also correctly notes that the abuse and neglect statutes require that an abuse and neglect petition "allege specific conduct including time and place [and] how such conduct comes within the statutory definition of neglect or abuse with references thereto[.]" W.Va. Code § 49-6-1(a). Rule 18 of the West Virginia Rule of Procedure of Child Abuse and Neglect Proceedings also provides that the petition must contain "[a] statement of facts justifying court intervention which is definite and particular and describes: (1) The specific misconduct, including time and place, if known, or incapacity of the parent(s) and other person(s) responsible for the child's care. . . ."

In this case, all but one subpart of petitioner's four assignments of error rely upon two factual assertions: (1) that there were no specific allegations against him in the abuse and neglect petition, and (2) that his adjudication and termination were based upon a finding of "abandonment." Contrary to these assertions, the DHHR and guardian argue that there was an allegation in the abuse and neglect petition that petitioner failed to provide for his child due to his incarceration and that the circuit court did not find "abandonment" but found that he failed to provide for his child.

As to the first factual assertion, the record on appeal clearly shows that the DHHR listed petitioner and the child's mother as the adult respondents in its verified abuse and neglect petition. In that petition, the DHHR stated that it "believes the circumstances of the Respondents' care of the minor child constitutes [sic] abuse and/or neglect, as those terms are defined in W.Va. Code § 49-1-3." The petition further provided that a DHHR worker informed petitioner in November of 2014 "that there would be allegations for neglect against him due to the fact that he is in jail and cannot provide for or take care of the respondent child." Therefore, the verified abuse and neglect petition alleged that petitioner, who was named as an adult respondent therein, committed child abuse and/or neglect for failing to provide for and take care of his child due to his incarceration. For that reason, we disagree with petitioner's claim that the petition contained no specific allegations against him.

The allegations against petitioner were sufficiently specific to place him on notice of the alleged abuse and/or neglect. This Court has held that "[i]f the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W.Va. 683, 280 S.E.2d 315 (1981). Here, petitioner filed a verified response to the petition in which he admitted to the circumstances of his then-incarceration as alleged, which demonstrated his opportunity to consider the allegations against him and respond thereto. While petitioner was later released from his initial incarceration for a short time, it is undisputed that he was re-incarcerated on a separate charge by the time of the adjudicatory and dispositional phases of these proceedings. Petitioner's incarceration and inability to care for his child was raised in the petition and

continued to exist as a condition through the time of disposition. Therefore, we find no merit to petitioner's factual assertion that the petition made no specific allegations against him.

As to the second factual assertion, the circuit court's adjudicatory and dispositional orders make no reference to, nor finding of, petitioner's "abandonment" of the child. The circuit court specifically made findings that petitioner was incarcerated and his incarceration rendered him "unable to have any involvement in the life of [the child] or to comply with the conditions of a family case plan." Based on that finding, the circuit court concluded that petitioner "emotionally and financially abused [the child]." Thereafter, the circuit court found that termination of petitioner's parental rights was in the child's best interests; that there was no alternative to termination that could ensure the child's physical and emotional well-being; and that there was no indication that the conditions of neglect could be corrected in the near future. Based upon those findings and conclusions, the circuit court terminated petitioner's parental rights to the child.

For those reasons, we agree with respondent DHHR and respondent guardian that the verified abuse and neglect petition contained a sufficient allegation of petitioner's failure to provide for the child and that the circuit court did not make a finding of "abandonment." Petitioner's argument that the circuit court's finding equates to "abandonment" has no merit. The underlying petition alleged that petitioner could not care for his child; the evidence supported the conclusion that petitioner failed to properly supervise or otherwise provide for his child; and the circuit court found that petitioner failed to provide for his child under the circumstances presented. We agree with respondents that the circuit court did not find nor conclude that petitioner legally abandoned his child.

As such, we find that petitioner's factual assertions regarding the allegations against him in the petition and the circuit court's findings are not supported by the record on appeal. Because all but one of petitioner's arguments rely upon factual assertions, we find no merit to petitioner's claims that the circuit court (1) erred in proceeding to the adjudicatory and dispositional hearings when there were no allegations against him in the abuse and neglect petition; (2) erred in adjudicating him on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; (3) erred in terminating his parental rights on the basis of abandonment when abandonment was not alleged in the abuse and neglect petition; and (4) violated his substantive and procedural due process rights under the West Virginia Constitution for terminating his parental rights when there were no allegations against him in the abuse and neglect petition.

The remaining issue on appeal is whether the circuit court violated petitioner's due process rights when it failed to continue the adjudicatory and dispositional hearings based on scheduling conflicts with his criminal proceedings in the State of Michigan. Petitioner argues that his criminal proceedings prevented him from being present at the hearings below, but that his criminal proceedings should not have been held against him in the ruling on his motion to continue because, at that time, he was only charged with a crime. Having reviewed the record on appeal, the parties' arguments, and pertinent legal authority, we find no due process violation in the circuit court's proceedings in this matter. Our rules in abuse and neglect proceedings in this State unequivocally provides that "[u]nder no circumstances shall a child abuse and neglect

proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." W.Va. R. P. for Child Abuse and Neglect Proc. 5. Such a rule protects the children's right to achieve permanency promptly. *See In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002) (noting that "scholars have opined that the potential for continuing the abuse and neglect action until after the conclusion of the criminal case is not palatable for the obvious reason that prompt disposition of child abuse/neglect proceedings is essential. . . . This jurisdiction has definitively spoken to that issue, as manifested in Rule 5 of the Rules of Procedure for Child Abuse and Neglect . . . ."). Moreover, the circuit court in this case granted petitioner multiple continuances in an effort to accommodate his circumstances, and petitioner was represented by counsel at each hearing and each phase of the proceedings. Based on the facts of this case, we find that the circuit court acted in the best interests of the child and committed no constitutional violation in denying any further continuance of the adjudicatory and dispositional hearings due to petitioner's criminal proceedings in the State of Michigan.

For the foregoing reasons, we find no error in the circuit court's April 4, 2016, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II