# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **F.W. and J.W.-1**

**No. 20-0167** (Wood County 19-JA-109 and 19-JA-110)

**FILED**
**November 4, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.W.-2, by counsel Nancy L. McGhee, appeals the Circuit Court of Wood County's January 22, 2020, order terminating his parental rights to F.W. and J.W.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Brandon Ledford, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him upon allegations not contained in the petition and upon insufficient evidence, and in denying him a post-dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because a child and petitioner share the same initials, we will refer to them as J.W.-1 and J.W.-2 respectively, throughout this memorandum decision.

[2]Several of petitioner's assignments of error have been consolidated for clarity and brevity. Furthermore, petitioner does not raise an assignment of error specifically challenging the termination of his parental rights to the children. He does, however, in one sentence of an assignment of error related to adjudication, assert that the circuit court lacked the authority to terminate his parental rights because he was improperly adjudicated and cites our holding in *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). However, in that case, the circuit court terminated the father's parental rights without first adjudicating him as an abusing parent—facts that do not apply here. Because we find no error in petitioner's adjudication, as more fully set forth below, we find it unnecessary to discuss the termination of his parental rights, especially in light of his failure to address the termination independently.

1

by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, the parents were the subject of child abuse and neglect proceedings based upon their substance abuse and domestic violence. Petitioner stipulated to the allegations contained in the petition, and the circuit court adjudicated him as an abusing parent. The circuit court granted the parents an improvement period in October of 2017. In April of 2018, the parents successfully completed their improvement periods, and the children were returned to their custody.

In June of 2019, the DHHR filed the instant petition against the parents alleging that their chronic substance abuse impacted their ability to parent the children and provide them with necessities such as adequate and safe housing. Specifically, the DHHR alleged that upon receiving a referral in March of 2019, it investigated the home and found that it lacked running water, had inadequate heat, and had frequent drug-related traffic. Further, the mother appeared to be under the influence of drugs as she could not easily remember her children's birth dates and could not remain focused. The mother reported to the worker that petitioner lived in the home but was incarcerated at the time for "possession of meth."[3] Later in June of 2019, a code enforcement officer visited the home due to its lack of water, and the police department sent officers to assist in vacating the property. The DHHR worker also came to check on the welfare of the children. Upon arrival, the code enforcement officer found then two-year-old F.W. unsupervised outside in a parking lot and the front door of the home wide open. The police officer reported that numerous people came in and out of the home while the officers attempted to vacate the property. Several of the home's occupants appeared to be under the influence of drugs.

The portions of the petition concerning allegations of abuse and neglect against petitioner are as follows:

> The Respondent Mother M.C. and [petitioner] have abused substances to the point where proper parenting skill have been impaired, as demonstrated by their choosing to spend their money on substances as opposed to spending their money to provide adequate food and housing to their children. The Respondent Mother M.C. and [petitioner] have failed to provide adequate housing for their children, and this is not solely due to lack of finances given that they have the money to purchase illegal substances.

---

[3]According to petitioner, he was incarcerated from May of 2018 to February of 2019 for a parole violation (possession of a controlled substance with the intent to deliver) of his 2014 felony conviction (operating a clandestine drug lab). Apparently, the mother was mistaken, and petitioner was not incarcerated at the time of the petition's filing in March of 2019. In July of 2019, petitioner pled guilty to a lesser-included misdemeanor for the previous possession charge. That same month, petitioner absconded from an inpatient drug rehabilitation facility—a special term of his parole—and was reincarcerated. Petitioner's parole has been revoked at least twice.

2

A preliminary hearing was held in July of 2019, but petitioner did not appear because he had not been served with the petition due to his incarceration.[4] The circuit court found probable cause to believe that the children were abused and neglected. In August of 2019, the DHHR filed an amended petition, which contained corroborating statements from the mother's adult daughter concerning the abuse and neglect of F.W. and J.W.-1.

The circuit court held contested adjudicatory hearings in September, October, and November of 2019. First, the code enforcement officer testified that the home lacked running water and that the water meter had been altered to access water without paying. He further testified that he found then-two-year-old F.W. outside by herself in a parking lot. Next, the police officer testified that the children looked dirty and that the home had eight to ten individuals living there. He further testified that the mother was nervous, uncooperative, and defensive. After the police officer's testimony, the mother's adult daughter testified that she witnessed her mother and others smoke marijuana in the home while in the presence of the children and that her mother would spend hours away from the children without explanation. She further reported that she was worried about her siblings' welfare. The DHHR then presented the testimony of the investigating DHHR worker who stated that the mother had two prior child abuse and neglect proceedings, and that the worker came to the home for the most recent referral due to the lack of running water. She further testified that the mother could not focus when asked questions and her behavior was "erratic." Next, petitioner testified that he was incarcerated for violating parole and that his next parole hearing would be January of 2020. On cross-examination, petitioner admitted that he used methamphetamine and marijuana one month after the dismissal of the prior child abuse and neglect case in April of 2018, which resulted in his parole revocation in May of 2018. He further testified that he had not provided for the children either emotionally or financially since May of 2018, had only visited the children twice while he was not incarcerated from February of 2019 to July of 2019, and was aware of the poor conditions of the home. He testified that he was also aware that the mother struggled to pay bills and had difficulty taking care of the children. Finally, the mother testified that petitioner had an "addiction" problem, but that she had no substance abuse issues.

In its adjudicatory order, the circuit court found the following:

> The Court finds that [petitioner] is currently incarcerated on a 2014 felony conviction of Operating a Clandestine Drug Lab. The Court further finds that [petitioner] has been granted parole twice and revoked twice. The Court finds that [petitioner] was recently revoked in June/July 2019 for absconding and a possession charge that was later dropped to a misdemeanor simple possession of marijuana. The Court further finds that [petitioner] was incarcerated for his first revocation from May 2018 to February 25, 2019.

The circuit court went on to detail petitioner's testimony that despite being released from February to July of 2019 and knowing that the mother was struggling to provide the children with adequate housing, food, clothing, and other necessities, petitioner failed to provide any kind of support for his children. The circuit court noted that although petitioner married the mother in May of 2019,

---

[4]Petitioner was served with the petition in late July of 2019.

3

"due to his own actions he voluntarily absented himself from his children's lives and now is incarcerated." Ultimately, the circuit court found petitioner to be an abusing parent.

In December of 2019, the circuit court held two dispositional hearings. At the first hearing, the DHHR presented a report that the children's foster family took them for medical care and learned that the children were developmentally delayed, underweight, and had sustained permanent eye damage due to medical neglect. Petitioner's counsel informed the circuit court that petitioner's parole officer would forbid petitioner from living in the Parkersburg area if released on parole, which would inhibit his ability to participate in an improvement period.[5] Nonetheless, petitioner moved for a post-dispositional improvement period. The mother then testified and confirmed that her prior child abuse and neglect proceeding concerned allegations of substance abuse and domestic violence with petitioner. At the second dispositional hearing, petitioner testified that he understood that he was adjudicated due to his drug use that led to his incarceration. He also explained that his discharge date was January of 2021, but he could be paroled in January of 2020. He stated that he tested positive for drugs and violated parole within a month of having F.W. returned to his care in April of 2018, and that he violated parole in July of 2019, after absconding from an inpatient drug rehabilitation center. Petitioner further testified that he received services such as substance abuse classes, parenting and adult life skills classes, and counseling during the previous child abuse and neglect proceeding. Finally, he testified that he did not know where he would live or whether he would be required to attend inpatient drug rehabilitation if he were granted parole in January of 2020.

Within the dispositional order, the circuit court found that despite petitioner receiving services to address his substance abuse in a prior child abuse and neglect proceeding, he was charged with felony possession of a controlled substance with the intent to deliver just one month after F.W. was returned to his care in April of 2018. The circuit court also noted that petitioner absconded from an inpatient drug rehabilitation center—required as a special term of his parole—as recently as July of 2019. The circuit court found that since the dismissal of the prior child abuse and neglect proceeding, petitioner had not consistently lived in the home and his parole had been revoked twice. Further, the circuit court found that petitioner continued to abuse drugs and was a habitual user such that his parenting skills were seriously impaired and petitioner had not responded to or followed through with the appropriate and recommended treatment, services, or other rehabilitative efforts to correct the conditions of abuse and neglect. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated his parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the January 22, 2020, dispositional order terminating his parental rights.[6]

---

[5]According to the record, petitioner's parole officer prevented petitioner's contact with the mother and the children because of the domestic violence issues from the 2017 child abuse and neglect proceeding.

[6]The children's mother's parental rights were also terminated below. According to respondents, the permanency plan is adoption in the children's current foster home.

4

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges several errors regarding his adjudication. According to petitioner, the petition contained only conclusory allegations, which violated his right to meaningful notice. Additionally, petitioner argues that the circuit court failed to order the DHHR to amend the petition to include more specific allegations against him. Also, petitioner argues that the DHHR failed to prove that he habitually used drugs which impaired his ability to parent and provide basic necessities for the children. Petitioner further argues that the circuit court failed to consider his lack of financial resources and improperly considered information outside of the petition. We disagree and find no error in petitioner's adjudication.

We first address petitioner's assignments of error regarding the sufficiency of the petition. Petitioner is correct that West Virginia Code § 49-4-601(b), in relevant part, requires that "[t]he petition shall allege specific conduct including time and place, how the conduct comes within the statutory definition of neglect or abuse with references to the statute, any supportive services provided by the department to remedy the alleged circumstances, and the relief sought." Petitioner further relies upon *In re Samantha M.*, 205 W. Va. 383, 518 S.E.2d 387 (1999) for the proposition that the petition here was insufficient. However, in that case, the petition made no allegations against the father whatsoever and he was deemed a nonabusing parent. Later, when new allegations arose against the father, the DHHR failed to file a petition containing said allegations. Such is not the case here. The record shows that the DHHR's petition was detailed and specific in regard to petitioner's incarceration for drug-related charges and his failure to provide adequate housing for the children as it alleged that the water was turned off, there was frequent drug-related traffic in the home, and one child was found unsupervised—specific facts that petitioner does not challenge. "In interpreting the requirement that specific facts be alleged in the petition, this Court has held that conclusory statements are insufficient and that the petition must show facts." *Id*. at 392, 518 S.E.2d at 388 (citation omitted). Based upon our review of the record, we find that there were specific facts alleged in the petition that constituted abuse and neglect of the children.

Petitioner was also put on notice that his alleged substance abuse negatively impacted his ability to parent. "If the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford

a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1981). Here, the petition reported that petitioner was incarcerated for "possession of meth," had a previous child abuse and neglect proceeding due to his substance abuse, and failed to provide basic necessities for the children. Petitioner further argues that the circuit court considered additional evidence outside of the petition such as his parole violations. However, he ignores the fact that this Court has held that "facts developed after the filing of the petition, or amended petition, may be considered in evaluating the conditions which existed at the time of the filing of the petition or amended petition." *In re Brandon Lee B.*, 211 W. Va. 587, 590, 567 S.E.2d 597, 600 (2001). At the adjudicatory hearing below, the circuit court learned of petitioner's parole revocations, his substance abuse in May of 2018, and his absconding from inpatient drug rehabilitation in July of 2019.

As we have previously recognized,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden."

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Here, the conditions existing at the time of the petition's filing were the parents' substance abuse and failure to provide adequate housing and basic necessities for the children. All of the evidence at adjudication concerning petitioner's parole violations for drug-related offenses and his absconding from inpatient drug rehabilitation during the months leading up to the petition's filing clearly spoke to this condition, as it existed when the petition was filed. This is in keeping with *Brandon Lee B.*, as quoted above. The petition in this matter outlined the allegations against petitioner with specificity such that he was informed of the petition's basis and able to rebut the allegations against him. Therefore, any argument advanced on appeal seeking to limit the circuit court's consideration of relevant evidence because it occurred on a date other than that set forth in the petition does not entitle petitioner to relief. Moreover, in light of this finding, the circuit court did not err by failing to order the DHHR to amend the petition as the petition was legally sufficient.

We now address petitioner's contention that the DHHR did not prove by clear and convincing evidence that he habitually used drugs to the point that it impacted his parenting and that the circuit court failed to consider his lack of financial resources. Having determined that the circuit court properly considered evidence of petitioner's substance abuse in May of 2018— immediately after F.W. was returned to his care from the prior child abuse and neglect case, his arrest for possession with intent to deliver a controlled substance in May of 2018, as well as his absconding from inpatient drug rehabilitation in July of 2019, this argument is of no moment. As the circuit court found, the evidence conclusively established that petitioner's parole violations were necessarily tied to his substance abuse, which resulted in his repeated incarcerations and inability to care for the children. West Virginia Code § 49-1-201 defines "neglected child" as a child "[w]ho is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian . . . ." We agree with the circuit court that petitioner "voluntarily absented" himself from his children's lives

by repeatedly violating parole, which resulted in his incarceration. Moreover, the circuit court did not need to consider petitioner's alleged lack of financial resources, because the above definition of "neglected child" does not require such a consideration. There was ample evidence that petitioner had not lived continuously in the home since May of 2018, and due to his parole violations, remained absent from the children's lives. As such, we find no error in the circuit court's adjudication of petitioner as an abusing parent.[7]

Last, petitioner argues that the circuit court erred in denying his motion for a post-dispositional improvement period. Petitioner contends that he met his burden of proof in demonstrating that he was likely to fully participate in an improvement period because he testified that he (1) previously completed an improvement period in the 2017 child abuse and neglect matter, (2) had a parole hearing scheduled for January of 2020, (3) had prospects for employment upon release, (4) had a strong bond with F.W., (5) accepted the responsibility of his actions, and (6) would leave the mother if her parental rights were terminated. We find that petitioner is entitled to no relief.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, the evidence showed that despite petitioner's completion of an improvement period in the 2017 child abuse and neglect case, which included services such as substance abuse classes, parenting and adult life skills classes, and counseling, he tested positive for controlled substances and was arrested for possession with the intent to deliver a controlled substance just one month after the dismissal of the 2017 proceeding. Further, the record shows that petitioner violated the conditions of his parole numerous times, including absconding from inpatient drug rehabilitation. Petitioner claimed that he was likely to be released on parole in January of 2020, but this claim is merely speculation. Most importantly, petitioner's counsel explained that petitioner's parole officer would not allow petitioner to live in the same area as the children if he were released, thus limiting petitioner's ability to participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-dispositional improvement period.

---

[7]For clarity, a respondent parent is "abusing [or] neglecting" when their conduct "has been adjudicated by the court to constitute abuse or neglect as alleged in the petition charging child abuse or neglect." *See* W. Va. Code § 49-1-201. "Child abuse and neglect" is further defined as "any act or omission that creates an abused child or a neglected child as those terms are defined in [W. Va. Code § 49-1-201]." *Id.*

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 4, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison