STATE OF WEST VIRGINIA, *ex rel.*
ROBERT DALE MOORE

*v.*

THOMAS M. MUNCHMEYER

(No. 13224)

Submitted May 8, 1973.          Decided July 3, 1973.

*William L. Jacobs,* for plaintiff in error.

*Albright & Richmond, Richard M. Richmond, Joseph P. Albright,* for defendant in error.

NEELY, JUSTICE:

This is an appeal from a final order of the Circuit Court of Wood County, West Virginia, entered on August 27, 1971, denying appellant's writ of prohibition. The appellant sought to prohibit Thomas M. Munchmeyer as Special Judge of the Intermediate Court of Wood County from enforcing a juvenile court order which had awarded permanent custody of the appellant's nine infant children to the Wood County Department of Welfare. The circuit court's final order of August 27, 1971, found that the Intermediate Court of Wood County, sitting as a juvenile court, had jurisdiction of all parties to the proceeding and had jurisdiction of the subject matter in Juvenile Neglect and Delinquency proceeding No. 2293, at the time an order divesting appellant of custody of the infant children was entered on December 8, 1967.

This final order also found that the intermediate court did not usurp or abuse its jurisdiction in entering the December 8, 1967 order, and therefore, an enforcement order entered on August 16, 1971 by appellee Judge Munchmeyer was valid. The question presented in this appeal is whether the Circuit Court of Wood County erred in denying the writ of prohibition.

It is agreed that the sole issues before the circuit court in the prohibition proceeding were whether the December 8, 1967 order of the juvenile court was void because the petition upon which it was based was legally insufficient for failure to state facts and whether it was void because the order divesting appellant of custody failed to find that the children were neglected.

Chapter 49, Article 6, Section 1 of the *Code of West Virginia,* 1931, as amended, which governs the form of petitions to a juvenile court states in relevant part:

> "If the State department, or a reputable person, believes that a child is neglected, the department or the person may present a petition *setting forth the facts* to the juvenile court in the county in which the child resides, . . ." [emphasis supplied]

The original child neglect petition in this case alleged the following facts which have been numbered in the brackets by this Court:

> "By virtue of a prior order of this Court, the said infants are in the sole custody of Robert Moore; evidencing a mental instability, the father, Robert D. Moore, [1] has repeatedly exposed said infants to wrangling and argument with his estranged wife, officials of the Department of Welfare and others, [2] and has failed to provide needed and adequate medical care for one or more of said infants, [3] and has permitted one or more of said infants, and specifically Stephen, to operate a motor vehicle on a public highway, in his presence and when said infant was below the legal driving age; upon information and belief, [4] the home provided by the said Robert Moore is without [4a] indoor toilet and [4b] bath facilities; that upon information and belief, and at

least on the 5th day of June, 1967, [5] the said home was not supplied with natural gas service, which was the mode of cooking, [6] and had not a kitchen sink attached to the sanitary sewer or any sewer system; [7] that the source of water in the main living area of said home consists of a pipe protruding from the floor with a spiggot attached thereto; that upon information and belief, [8] the said named infants are frequently left without adult supervision and in the care of the older two or three or more said infants; . . ."

Other than the case of *In Re Simmons Children,* 154 W.Va. 491, 177 S.E.2d 19, (1970), in which this Court stated in point 2 syllabus, "The petition to the juvenile court in cases involving neglected children should set forth the facts constituting the neglect and not merely state conclusions in connection therewith," there is no statutory or case law which establishes the required degree of factual specificity in a juvenile neglect petition. The child neglect petition in this case was more specific than the petition in *In Re Simmons, supra.* The Simmons petition alleged that the seven Simmons children, with ages ranging from three to thirteen years, were neglected because their school attendance was irregular, and because they were not receiving proper parental supervision. This Court held that the Simmons petition was fatally defective since, "[I]t states no facts with regard to the improper supervision of the parents and the failure to attend school. It contains only general statements which are conclusions." However, the petition in the case at bar sets forth eight specific facts from which a reasonable inference of neglect could be drawn.

Neglect is not a term of fixed and measured meaning; *its meaning varies as circumstances change. People ex rel. Wallace v. Labrenz,* 411 Ill. 618, 104 N.E.2d 769, *cert. denied,* 344 U.S. 824 (1952). Each case involving allegedly neglected children must be determined on the facts as they are developed. Each petition must be evaluated individually. If the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is

brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient. Under this test, the petition in this case was legally sufficient, and we hold, therefore, that the Circuit Court of Wood County did not err when it found the petition sufficient.

Appellant challenges the juvenile court's order of December 8, 1967 on the grounds that the order fails to contain an adjudication that the infants were neglected. This Court finds no merit in this argument.

The juvenile court order of December 8, 1967, after stating that mature consideration had been given to the evidence, states: "Having rendered its opinion upon the matters of law and fact, which opinion in writing is ORDERED filed, does further ADJUDGE and ORDER that the custody of the children named in the petition be, and the same is hereby, awarded to the Wood County Department of Welfare, Division of Child Welfare. . . ." Although the order contains additional statements regarding the Department of Welfare's authority to deal adequately with the infants and other matters, it does not, in precise language, declare the infants to be neglected children. The court's opinion, however, which is incorporated in the order by reference, states specifically: "This court, therefore, finds that all of said children named in the petition have not received proper paternal care, attention or guardianship from their father since the temporary award of custody to him in the divorce action, and that he has neglected said children." The juvenile court's opinion further disclosed the following:

> "Since institution of the divorce action the father of the children named in the petition has unnecessarily and deliberately repeatedly exposed said children to protracted arguments and disputes between he and the mother of the children, has unnecessarily and deliberately in the presence of said children berated, not only their own mother, but also the employees and agents of the Wood County Department of Welfare while they were attempting to provide care and

attention for the children pursuant to order of the Court, and on some such occasions, the father expressed the wish, and even demanded, that said children be present and within hearing during the course of these incidents. This Court, accordingly, is of the opinion that such conduct on the part of the father has, as alleged in the petition, evidenced a mental instability on his part, and that such conduct has had a detrimental effect upon the persons of the children named in the petition.

"The evidence also discloses that the house in which the father and the children named in the petition resided subsequent to the award of custody in the divorce action, has never been finished or completely equipped as a dwelling .... The house was served by a waterline, installed by the father, which broke from time to time, and was partially exposed causing freezing of the line in cold weather and interruption of the water supplied to the house from time to time. During the same period of time, there have been other interruptions in the water supply to the house by reason of nonpayment by the father of the water rent to the City of Parkersburg. . . .

"On the 14th day of May 1967, the Hope Natural Gas Company shut off the supply of natural gas to the house for non-payment for the service. This service has never been restored. Electric service is still being furnished the house, and subsequent to the termination of the gas service, the only cooking and the only heat in the house was by the use of an electric hot plate. At no time during the course of his testimony did the father assert that the termination of the water supply and gas to the house was by reason of his financial inability to pay for the service. . . .

"The evidence also clearly discloses that from time to time the younger of the children named in the petition were left at the father's home without plan or provision made for competent adult supervision. On one such occasion, the youngest child, Richard, was injured when his hand was caught in the wringer of the washing machine at the house at a time when the oldest person at

the house was the child, Barbara, then eight or nine years of age. . . .

"The evidence also clearly shows that the father had been seen driving a motor vehicle on the public streets one or two car lengths behind one driven by the child, Stephen Moore, then fifteen years of age, which leads to the inevitable conclusion that said child was operating said vehicle with the full knowledge and consent of the father at such time. . . .

" . . . The court makes no such finding [of neglect] as concerns the mother of said children by reason of the fact that she has been without legal responsibility with respect to said children since the award of custody to the father.

" . . .The only other source of income available to the mother and children would be by virtue of public assistance, Aid to Dependent Children, also only after it being determined by that Agency that the father was not a proper source of income for the mother and children. The maximum grant for the mother and ten children under this arrangement is One Hundred Sixty-five Dollars ($165.00) monthly, obviously also less than necessary. The only reasonable arrangement appears to be an award of custody in the Wood County Department of Welfare, Division of Child Welfare, so that that Agency can provide a larger sum of money monthly for the maintenance of the children and if that Agency be of the opinion that the mother can and will provide suitable parental care for the children, they can be placed in her care by that Agency."

The opinion of the judge delivered at the time the order was entered may be considered to explain the meaning of ambiguous or equivocal terms or language in the order. *Kane & Keyser Hdw. Co. v. Cobb,* 79 W.Va. 587, 91 S.E. 454 (1917). Furthermore, as stated in *State ex rel. Sewell Valley R.R. Co. v. Sharp,* 111 W.Va. 39, 160 S.E. 302 (1931), " 'If possible, that construction will be adopted which will support the judgment rather than one which will destroy it.' " Accordingly this Court will construe a judgment order as sufficient although it does

not contain specific adjudicatory language, if adjudicatory language is found in the opinion which is made part of the record by order. This holding finds ample precedent in *Beecher v. Foster*, 66 W.Va. 453, 66 S.E. 643 (1909) in which this Court said at page 457: " 'In construing a decree the intent of the court granting it will be looked to, and provisions may accordingly be sometimes implied. The decree will be construed and restricted in accordance with the pleadings and even with reference to other parts of the record.' 16 Cyc. 498; *Walker's Ex'r, v. Page,* 21 Grat. 636."

We find that the respondent Judge had jurisdiction of the parties and of the subject matter in the juvenile court proceedings, and that there was no abuse of the court's legitimate powers. Accordingly we find that the circuit court was correct in denying the writ of prohibition.

*Judgment affirmed.*