STATE OF WEST VIRGINIA

*v.*

KIMBERLY SUE SCRITCHFIELD, AN INFANT UNDER THE AGE OF
EIGHTEEN (18) YEARS, AND MARGARET SCRITCHFIELD

(No. 14943)

Decided July 17, 1981.

*C. Patrick Carrick* for appellant.

684

*Chauncey H. Browning*, Attorney General, *Billie Gray*, Assistant Attorney General, for appellee.

McGRAW, JUSTICE:

Margaret Scritchfield appeals from the final judgment order of the Circuit Court of Marion County which granted permanent custody of the appellant's infant daughter, Kimberly Sue Scritchfield, to the West Virginia Department of Welfare. The court found that the infant was a neglected child and permanently terminated the parental rights of the mother, Margaret Scritchfield, appellant herein, and of the father, who was "unknown to the Court."[1] The appellant contends that the custody proceedings which resulted in the termination of her parental rights were conducted without regard to and in violation of the requirements of our child welfare statutes, W.Va. Code § 49-6-1 *et seq.* (1980 Replacement Vol.). The appellant also asserts that the lower court erred in granting the Department of Welfare temporary custody of the infant for more than thirty days and in denying the appellant's request for an improvement period to remedy any adverse circumstances found. The appellant's final contention is that the evidence does not support the lower court's finding that the infant was a neglected child and that the court therefore erred in terminating her parental custody and in granting permanent custody of the child to the Deparment of Welfare. We find merit in several of the appellant's contentions and we reverse the judgment of the circuit court and remand the case for further proceedings.

The child custody proceedings below were commenced on September 1, 1978, upon the filing of a petition, signed and verified by an employee of the Department of Welfare, which sought to have Kimberly Sue Scritchfield, then aged two years, declared a neglected child. The petition cited the medical condition of the mother as the cause of the alleged neglect and stated that the Department of Welfare had provided support for the child since August 2, 1976. The petition requested that the Department of Welfare be granted permanent custody of the child with the right to

---

[1] Notice of the proceedings was given by publication.

consent to her adoption. By order of the circuit court dated September 5, 1978, separate counsel were appointed to represent the appellant and the child.

Preliminary hearings were held on October 20, 1978, and on October 27, 1978. At the conclusion of these proceedings, the circuit court denied the appellant's request for an improvement period and ordered that the child remain in the temporary custody of the Department of Welfare for a period not to exceed thirty days pending a final hearing on the matter. At least one continuance was granted upon request of the attorney for the child and the final hearing was not held until April 30, 1979. During this time the child remained in the temporary custody of the Department of Welfare.

The testimony taken at the hearings revealed that the appellant, who was 33 years old at the time of the final hearing, was the mother of three children. Her oldest daughter, who was 17 years old, was married, had one child and had established her own home with her husband not far from her mother's home. The appellant's son, age 11, was living with his mother at the time of the final hearing and was attending elementary school. The appellant's infant daughter, Kimberly Sue, was 3 years old at the time of the final hearing and had been in the temporary custody of the Department of Welfare since she was six months old. The infant had been placed in a foster home, but was permitted to visit her mother from time to time through arrangements made by employees of the Department of Welfare.

The appellant has had a history of mental illness and has been diagnosed as suffering from schizophrenia. Between 1970 and 1978 she had been hospitalized for treatment at the Weston State Hospital four times. The last of these periods of hospitalization ended with the appellant's release from the Weston State Hospital in September of 1978. At the time of the final hearing the appellant appeared to be aware of her mental problems, was taking medication to relieve the symptoms of schizophrenia and depression and was receiving treatment on an out-patient basis at the Valley Community Health Center in Fairmont.

In June 1976, the Department of Welfare had petitioned the circuit court to remove all three children from the custody of the appellant after a welfare worker inspected her home and found the living conditions at the home unsatisfactory. Case workers for the Department of Welfare testified that the appellant was emotionally unstable and unable to properly care for the children, that she moved frequently and that she was unable to remember appointments at this time. In the summer of 1977, the two older children were returned to the appellant's custody, but Kimberly Sue remained in a foster home in the temporary custody of the Department of Welfare.

The foster care worker who filed the child neglect petition in this proceeding testified that since the appellant's release from Weston State Hospital in September 1978, the mother's relationship with her infant daughter had improved. The worker testified that the child visited her mother frequently and that the visits were going well, but that there was little parent-child interaction. She also stated that at the time of the final hearing the appellant appeared to be caring adequately for her eleven-year-old son, but that in view of the appellant's record of periodic hospitalization she was too unstable to care for Kimberly Sue. The witness found no fault with the living conditions in the appellant's home.

A psychiatrist from the Valley Community Health Center testified that the appellant's mental condition one week prior to the final hearing was under fair control and that he thought that she would be able to care for her infant daughter. He also stated, however, that the appellant's health condition might in time result in inferior house-keeping and food preparation. It was the opinion of the psychiatrist that "24-hour supervision would be necessary for an undetermined period of time" if the child, then age 3, was returned to the mother's custody. He was also concerned that it would be detrimental to the child to remove her from the environment in which she had been living since she was a few months old and return her to her

mother's home where new family bonding ties would need to be developed.

A social worker at Weston State Hospital, however, expressed the opinion that the appellant was capable of providing "the necessary shelter and mothering and clothing and feeding and education of a small child such as Kimberly" at the time she left the hospital in September 1978. The witness, who had considerable practical experience in her work at other institutions, testified that the appellant had become involved in group therapy programs for the patients at the hospital and had done very well. She was certain that comparable programs in which the appellant could participate were available in the community. The social worker expressed the opinion that the appellant's mental problems stemmed at least in part from the fact that she deeply desired to have her daughter returned to her but felt powerless in the case of the decisions being made concerning the infant's custody. She recommended a program of limited interaction between mother and daughter at first, with gradually lengthened visits leading to the eventual return of the child to the custody of the appellant.

The appellant in her own behalf testified that she lived in an apartment, which consisted of two bedrooms, a living room, a bath and a kitchen, with her eleven-year-old son. The appellant's sister and married daughter live nearby and she occasionally baby sits for her grandchild in her own home. She also testified that a good friend was available to take care of her infant daughter if it was necessary.

At the conclusion of the hearing, the court requested counsel for the infant to submit recommendations in writing for disposition of the matter and reasons therefor. The court-appointed attorney recommended that the Department of Welfare be given permanent custody of the child.[2] On June 6, 1979, the court entered a final order

---

[2] The attorney's recommendations and reasons are reproduced in part below:

    Based upon the evidence adduced at the hearings, I believe that the mental health of Kimberly Sue Scritchfield will be substan-

finding the child to be a neglected child and ordered termination of the parental rights of the appellant and the child's father. Permanent custody of the infant was placed in the Department of Welfare with the right to consent to her adoption. It is from this order that the appellant appeals.

Before we reach the merits of the case we note that in the proceedings below, the State, as the petitioner, was represented by the county prosecuting attorney's office, and the appellant and the child were represented by separate court-appointed counsel. At this stage of the proceedings the State is represented by the Attorney General's office and the appellant continues to be represented by her court-appointed attorney. The infant daughter, however, has made no appearance before this Court. No brief has been filed on her behalf and she is not represented by counsel on appeal.

W.Va. Code § 49-6-2(a) (1980 Replacement Vol.) provides that in neglect proceedings the child "shall have the right to be represented by counsel at every stage of the proceedings . . ." and that "[u]nder no circumstances may the same attorney represent both the child and the other party or parties. . . ." The record is silent as to any withdrawal by or reason for the absence of counsel for the child on appeal. We note this failure to comply with the statutory requirement and we suggest that upon remand

---

tially endangered and impaired if she is returned to the custody of Margaret Scritchfield because of the inability of Margaret Scritchfield to provide the necessary supervision for the child. Due to the nature of Margaret Scritchfield's mental illness, there does not appear to be any type of assistance or supervision available from the West Virginia Department of Welfare which would lessen the likelihood of impairment of Kimberly Scritchfield's mental health nor does there appear to be any likelihood that the conditions of neglect can be substantially corrected in the near future.

For the reasons stated above, I recommend that the Court terminate the parental rights and responsibilites of Margaret Scritchfield toward Kimberly Sue Scritchfield and commit the child to the permanent guardianship of the West Virginia Department of Welfare.

the child should be represented at every stage of the proceeding, including appeal, as required by the statute.

The appellant first contends that the child neglect petition filed by the Department of Welfare did not contain specific factual allegations as required by W.Va. Code § 49-6-1(a) (1980 Replacement Vol.), which provides in part that "[t]he petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the state department [of Welfare] to remedy the alleged circumstances and the relief sought."

A juvenile petition which states no facts respecting the improper care or supervision of the parents and contains only conclusory statements is defective. *In re Simmons Children,* 154 W.Va. 491, 177 S.E.2d 19 (1970). As we noted in *State ex rel. Moore v. Munchmeyer,* 156 W.Va. 820, 197 S.E.2d 648 (1973), there is little statutory or case law which defines the degree of factual specificity required of a juvenile neglect petition. We must look at each case where child neglect is alleged and at each child neglect petition on an individual basis.

> If the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient.

> 156 W.Va. at 823-824, 197 S.E.2d at 651.

We are of the opinion that the recitation of facts in the petition here does not satisfy this test.

The petition stated that the appellant neglected the child

> in that the child's physical or mental condition is impaired or endangered as a result of the failure or inability of the child's mother or father to supply the child with the necessary food, shelter, clothing, supervision or medical care and the condition is not due primarily to the lack of the financial means of the parents and that the said mother's medical

condition is such that she is uncapable [*sic*] of providing the aforesaid for the infant child. The said mother has been a patient in the Weston State Hospital from time to time and the said condition is not due primarily to the lack of financial means of the said mother.

The petition is couched largely in the language of W.Va. Code § 49-1-3 (1980 Replacement Vol.) which provides, in part:

'Neglected child' means a child:
(1) Whose physical or mental condition is impaired or endangered as a result of the present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education and the condition is not due primarily to the lack of financial means of the parent, guardian or custodian; or
(2) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian.

The statements in the petition which follow the statutory language and the allegation that the appellant is unable to provide her daughter with the necessities of life due to her medical condition do not constitute facts which show neglect of the child. They are merely general conclusory statements. "The petition to the juvenile court in cases involving neglected children should set forth the facts constituting the neglect and not merely state conclusions in connection therewith." Syl. pt. 1, *State ex rel. Moore v. Munchmeyer, supra*; Syl. pt. 2, *In re Simmons Children, supra*. Clearly these allegations do not meet the statutory requirement that the petition allege the specific conduct constituting neglect.

Nor do we think that the one allegation of fact contained in the petition—that the appellant has been a patient at the Weston State Hospital from time to time—satisfies the statutory requirement or the test set out in *State ex rel. Moore v. Munchmeyer, supra*. There is no indication of the reason for the appellant's hospitalization or of the nature

or severity of the illness that led to it. Neither is there any statement as to how the prior hospitalization of the appellant comes within the statutory definition of neglect. We do not see how the mere assertion in the petition that the appellant had been hospitalized in an institution for the treatment of the mentally ill sufficiently informs the appellant of the basis of the neglect charges. Nor are we willing to say that the mere fact of such hospitalization, standing alone, is an allegation of specific conduct constituting child neglect sufficient to support a petition for permanent termination of parental custody under W.Va. Code § 49-6-1(a).

The State apparently contends that our resolution of this issue will make it virtually impossible to allege and prove child neglect in cases where the alleged neglect results from the incapacity of the parent to care for the child due to mental illness. It is argued that in circumstances such as this it is rarely possible to allege "specific acts" of neglect, particularly in view of the fact that the child here had not been in the custody of the parent for over eighteen months. We agree with the assertions of the State, but we do not see how these arguments relate to the sufficiency of the petition in this case.

We do not question that the definition of "neglected child" contained in W.Va. Code § 49-1-3 includes those children whose well-being is endangered or impaired by the inability of the parent, as a result of a mental condition, to perform the most fundamental and essential of the parental obligations—to feed, clothe, shelter, supervise, educate and provide medical care. Under such circumstances, neglect may be proved upon a showing of an ongoing condition or course of conduct which has been or is likely to be detrimental to the physical or mental well-being of the child and which the parent has been unable or unwilling to correct.

Where, however, a child neglect petition is premised upon the inability of the parent to care for the child due to the parent's mental illness, such petition must set forth specific allegations of fact sufficient to inform the parent of the nature of the condition or conduct which constitutes or

is likely to result in neglect in order to satisfy the requirements of W.Va. Code § 49-6-1(a). If the petition requests permanent termination of parental custody it should specifically allege the inability or refusal of the parent to correct the condition or conduct. As the petition here does not state the nature of the appellant's "medical condition", allege that the appellant's treatment at the hospital was unsuccessful, or state any facts which would give rise to an inference that the appellant's medical condition presents a danger to the mental or physical well-being of the child, we find the petition defective and upon remand it should be amended.

The appellant's next major assignment of error is that the lower court erred in refusing to grant her request for an improvement period during which community welfare services would assist the appellant and arrange more frequent visits between the mother and the child, with the ultimate goal of permitting the mother to keep the child by herself. The motion was made by counsel for the appellant at the preliminary hearing held on October 27, 1978, and was objected to by the State. The court summarily denied the motion and ordered that temporary custody of the child remain with the Department of Welfare for a period not exceeding thirty days.

W.Va. Code § 49-6-2(b) (1980 Replacement Vol.) provides that

> [i]n any proceeding under this article, the parents or custodians may, prior to final hearing, move to be allowed an improvement period of three to twelve months in order to remedy the circumstances or alleged circumstances upon which the proceeding is based. *The court shall allow such an improvement period unless it finds compelling circumstances to justify a denial thereof,* but may require temporary custody in the state department or another agency during the improvement period. (Emphasis added.)

Clearly, the statute presumes the entitlement of a parent to an a opportunity to ameliorate the conditions or circumstances upon which a child neglect or abuse

proceeding is based pending final adjudication, no doubt in recognition of the fundamental right of a parent to the custody of minor children until the unfitness of the parent is proven. *See, e.g., In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973). The statute permits the court to deny such a request only upon a finding of "compelling circumstances." It seems obvious that when a court having jurisdiction of child neglect or abuse proceedings denies a motion by the parent or guardian for an improvement period under W.Va. Code § 49-6-2(b), the court must state on the record the compelling circumstances warranting the denial of such motion. The circuit court here did not state on the record the reasons for its denial of the appellant's request for an improvement period. The court did not even state in conclusory language that compelling circumstances existed which justified the ruling. The failure of the circuit court to make findings on the record as required by the statute is reversible error.

We also note that the statute does not limit "improvement period" to a period of time during which the mother and child live together. The statute specifically provides that the court may order the child into the temporary custody of the Department of Welfare or another agency during the improvement period. Where child neglect proceedings are premised upon a mental condition or illness of the parent which previously required the parent's hospitalization and during which time the child was not in the custody of the parent, an improvement period may be granted to observe the progress of the parent to determine if he or she is mentally able to care for the child without placing the child in the custody of such parent. At the end of the improvement period additional proceedings may be instituted to make a final disposition of the matter, with due consideration given to the progress of the parent.

The appellant here requested a four-month improvement period during which welfare services would assist her and would arrange more frequent visits with her daughter, with the ultimate goal of permitting the mother to keep the child by herself. Even if we assume that the facts before the court at the time of the preliminary hearing may have

constituted compelling circumstances which justifies the denial of an improvement period during which the appellant and her daughter lived together, there does not appear to be any justification for disallowing the appellant an opportunity to demonstrate, independent of custody, her ability to care for her child. This is especially true in view of the evidence adduced at the preliminary hearing concerning the appellant's improvement as a result of hospitalization, the uncertain nature of her chances for rehabilitation and the brief period of time between the appellant's release from the hospital and the date of the preliminary hearing during which there was an opportunity to observe the appellant's behavior and reactions in a non-structured environment. In any event, the failure of the circuit court to make the requisite findings of compelling circumstances justifying the denial of an improvement period was error and we reverse the judgment of the court on this ground.

The appellant also contends that the trial court erred in ordering retention of temporary custody of the child by the Department of Welfare for a period of more than thirty days. W.Va. Code § 49-6-3(b) (1980 Replacement Vol.) provides, in part,

> [i]f the court finds at the preliminary hearing that there are no alternatives less drastic than removal of the child and that a hearing on the petition cannot be scheduled in the interim period, the court may order that the child be delivered into the temporary custody of the State department or an appropriate person or agency for a period not exceeding thirty days.

As we noted above, at the conclusion of the preliminary hearing the circuit court ordered the Department of Welfare to take temporary custody for a period of not more than thirty days, pending a final hearing on the matter. The case was continued at least once upon motion of counsel for the child and the final hearing was not held until April 30, 1979. Throughout this period the Department of Welfare retained temporary custody of the infant. There is no indication on the record, however, that the

appellant objected to the motions for continuance or made any attempt to hasten the final hearing. Consequently, any error must be deemed to have been waived.

In view of our resolution of this case we need not address the appellant's final contention that the evidence adduced at the hearings below did not constitute clear, cogent and convincing proof of neglect which would justify the permanent termination of parental rights by the circuit court. We note, however, that although evidence on the record indicated an improvement in the appellants medical condition and in her relationship with her daughter, there is compelling evidence on the record which would probably support a conclusion of inability to care for the child. We are mindful, as was the circuit judge, of the unfortunate circumstances out of which this case arises, and we are cognizant of the principle that the Welfare of the child is the "polar star" by which the court will be guided in making an award of legal custody. *See In re Willis, supra.* Our decision today does not preclude further action by the Department of Welfare if the retention of custody by that agency continues to be warranted by the circumstances as they now exist. On remand, the Department of Welfare should amend its original petition so as to comply with the mandate of the Legislature contained in the requirements of W.Va. Code § 49-6-1(a) and the principles set forth in this opinion.

For the reasons stated herein we reverse the final judgment of the Circuit Court of Marion County terminating the appellant's parental rights and placing the child in the permanent custody of the Department of Welfare with the right to consent to her adoption. The case is remanded to that court for any further proceedings.

*Reversed and remanded.*