**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **N.W. and A.W.**

**No. 20-0942** (Putnam County 20-JA-12 and 20-JA-13)

**MEMORANDUM DECISION**

Petitioner Mother J.W., by counsel Paul Stroebel, appeals the Circuit Court of Putnam County's October 28, 2020, order terminating her parental rights to N.W. and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Maggie J. Kuhl, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her upon allegations of substance abuse not contained in the petition and of abandonment because the evidence did not support this finding.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the guardian filed an abuse and neglect petition alleging that petitioner's current whereabouts were unknown, that she abandoned the children, and that she failed to provide the children with necessary food, shelter, clothing, supervision, and/or education, which harmed or threatened their wellbeing. According to the petition, the children were left in the care of a nonrelative, L.S., who failed to provide them with proper supervision and allowed known

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, petitioner raises no argument in regard to the circuit court's termination of her parental rights. As such, the court's termination of those rights is not addressed in this memorandum decision.

drug users into the home. Additionally, L.S. failed to obtain proper dental care for A.W., which placed the child's health in jeopardy, and used inappropriate punishment by locking A.W. in a dark room. The guardian alleged that L.S. had custody of then-six-year-old N.W. since birth and had custody of A.W. for over one year at the time of the petition's filing. According to the guardian, petitioner simply dropped the children off with L.S. and thereafter failed to provide for them. The guardian later filed an amended petition in July of 2020. The amended petition did not contain any additional allegations against petitioner and, instead, included the children's fathers as named respondents in the proceedings. The proceedings also involved another child, A.Y., who is not at issue in this appeal.

Following the petition's filing, all three children underwent interviews at a Child Advocacy Center ("CAC"). During her interview, A.Y. disclosed that L.S. pulled A.W. off a chair by her hair, hit A.W. "with knuckles and . . . smacked her in the face," and confirmed that L.S. would lock the child in a dark bathroom as punishment. A.Y., then fifteen years old, also disclosed that L.S. would "smack her on the butt and make sexual comments toward her such as 'if I'm not hitting it, no one can.'" A.Y. indicated that L.S. would ask her if she wanted to have sex and then act like he was joking. A.Y. also disclosed that at one point seven people lived in the three-bedroom home and that an individual "touched her and made her touch him." According to A.Y., L.S. told her that the incident was her fault. During A.W.'s interview, she confirmed that L.S. punished her by locking her in a dark bathroom and once dragged her across the floor by her hair. She also disclosed that he used a belt for physical discipline.

On August 5, 2020, the court held an adjudicatory hearing, during which a DHHR worker testified to the investigation into the allegations against petitioner raised in the guardian's petition. The worker testified to the fact that the children lived with L.S. at the time of the petition's filing and that petitioner did not reside in the home. According to the worker, petitioner allowed the children to live with L.S. because she was unable to provide them with stable housing. Petitioner "signed over guardianship" of A.W. to L.S. on a sheet of notebook paper that was not dated or notarized. The worker clarified that no such document existed for N.W. According to the worker, petitioner would visit sporadically with the children and had participated in one of the children's recent birthday parties. However, the worker testified that it was L.S. who provided for the children's physical and emotional needs, not petitioner. The worker further discussed with petitioner whether L.S. had ever been inappropriate with petitioner when she was younger, as petitioner's mother previously dated L.S. Petitioner "basically confirmed" that if A.Y. made allegations that L.S. behaved inappropriately with her, the child was not lying. In fact, petitioner described L.S. behaving with her in the exact same manner that A.Y. described. Despite recognizing that L.S. posed a threat to the children, petitioner indicated that she had no concerns about the children being in his care. Petitioner also indicated that she wished to undergo substance abuse treatment for her intravenous heroin abuse but did not possess identification necessary to obtain such treatment. Specifically, the worker testified that petitioner "acknowledge[d] that at least part of the reason she couldn't care for her children was because of this drug addiction." The worker indicated that "[w]e did not substantiate for abandonment, but we did substantiate due to mental and emotional abuse" based on petitioner's pervasive drug abuse and its effect on her failure to provide for the children.

In arguing for petitioner's adjudication, the DHHR alleged that "from the State's perspective, [L.S.] would not have been able to seek medical treatment, possibly make educational decisions" for N.W. without having proper documentation regarding that child. The worker also testified to the extensive dental work that A.W. required, including having several teeth capped due to severe decay. The DHHR acknowledged that petitioner did provide L.S. with a sheet of paper indicating that she granted him legal guardianship of A.W., but went on to argue that "there was no legal proceeding, nothing legally done in the court system . . . negotiated by [petitioner] to give [L.S.] any rights to her two children."

Ultimately, the circuit court found that petitioner's decision making

> in the situation that she voluntarily put herself in, which was not being able to be a mother, not being able to support her children, involved in a long history of drug abuse, she just made a decision . . . to use the only . . . person she knew that she could dump her children off with.

Although the court found that placing the children with L.S. may have been petitioner's only choice, given her inability to properly care for them, "that was not only a poor choice, that was [a] horrible choice, and by its own effect, makes her an abusing and neglectful mother." The court also noted the fact that at least one child had health issues that went unaddressed while petitioner failed to "involv[e] herself in that." Further, the court clarified that the DHHR's failure to substantiate any specific abuse or neglect was not binding upon it and that it was free to make any legal determinations it felt were appropriate based on the evidence. In the order memorializing adjudication, the court found that "due to [petitioner's] decision to engage in drug use . . . , she was unable to care for her children or provide for their needs" and that "she chose to leave the children in the care of [L.S.], who was not an appropriate caregiver for the children." Further, the court found that petitioner "knew that [L.S.] had a proclivity for sexual abuse." Finally, the court found that petitioner's actions threatened and/or harmed the children's physical and/or mental health. As such, the court adjudicated petitioner as an abusing parent.

Given the limited scope of petitioner's arguments on appeal, it is unnecessary to address the remainder of the proceedings in detail. It is sufficient to point out that following petitioner's adjudication, the record shows that the DHHR offered her services to address the issues of abuse and neglect but that she failed to participate. Further, based, in part, upon her failure to follow through with the recommended and appropriate treatment to improve her capacity to adequately parent, the circuit court found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. As such, the court terminated her parental rights to the children in its October 28, 2020, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[3]According to the guardian, the children's fathers' parental rights were also terminated below. The permanency plan for the children is adoption together in the current foster home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises two assignments of error, both related to the circuit court's adjudication. First, petitioner alleges that the circuit court erred in adjudicating her based on her substance abuse because the petition made no reference to this allegation. According to petitioner, the circuit court's reliance on evidence of her substance abuse was improper. However, this argument does not entitle petitioner to relief because the circuit court clearly adjudicated petitioner upon her failure to provide for the children's needs and the fact that she left the children in the care of an inappropriate individual. In short, because of the overwhelming evidence establishing that petitioner, at a minimum, neglected the children in these regards, the fact that adjudication may have been based, in part, upon petitioner's drug use that was not specifically set forth in the petition does not constitute error.

Petitioner is correct that West Virginia Code § 49-4-601(b) requires, in part, that "[t]he petition shall allege specific conduct including time and place [and] how the conduct comes within the statutory definition of neglect or abuse." While substance abuse was not referenced in the petition, petitioner ignores the fact that the petition did specifically allege that she abandoned the children and failed to provide them with necessary food, shelter, clothing, supervision, and/or education, which harmed or threatened their wellbeing. As such, the petition complied with this statute. In addressing the contents of a petition, this Court has been clear that "the allegations of fact are adequate if they are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal." Syl. Pt. 2, in part, *State ex rel. Moore v. Munchmeyer*, 156 W. Va. 820, 197 S.E.2d 648 (1973). Here, petitioner was informed that the basis of the petition was her abandonment of the children and her failure to provide for them upon having placed them in L.S.'s care. That it was discovered after the petition was filed that petitioner's substance abuse was a contributing factor to these allegations did not require amendment of the petition, as petitioner alleges, given that the circuit court ultimately adjudicated petitioner upon allegations contained therein.

Petitioner attempts to paint the circuit court's adjudication of her in a vacuum by highlighting those findings that reference her substance abuse. She takes the court's findings out of context, ignoring the fact that her substance abuse was discussed at length at the adjudicatory hearing and in the circuit court's subsequent order because it was inextricably tied to her neglect

of the children. As the circuit court found, the evidence established that petitioner left the children in L.S.'s care so that she could engage in years of substance abuse. Further, petitioner took no actual steps to ensure that L.S. could attend to the children's needs, given that he had no legal rights to them. Instead, petitioner signed an undated, unnotarized slip of paper that expressed her intention for L.S. to have guardianship rights to A.W. and failed to take even this meager step in regard to N.W. Further, despite the fact that petitioner described inappropriate sexual behavior by L.S. toward her when she was younger and indicated that she believed A.Y.'s allegations against him because of this past behavior, petitioner nonetheless told the DHHR that she was not concerned about her children residing in L.S.'s home. While petitioner's substance abuse may have been the motivating factor for this neglect, it was unnecessary for the guardian to include allegations of substance abuse in the petition because the above-described conduct, in and of itself, constitutes neglect.

Indeed, a "neglected child" is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

W. Va. Code § 49-1-201. Here, the evidence is uncontroverted that petitioner left her children with L.S. because she could not properly provide for them. The evidence was further uncontroverted that petitioner did not, in fact, provide any of these necessities for the children. Instead, she left the children in the care of an inappropriate individual who failed to care for one child's dental health and engaged in inappropriate physical discipline. On appeal, petitioner makes much of the fact that a DHHR worker testified that L.S. met the children's needs, but this argument willfully ignores the fact that petitioner failed to meet the children's needs. Petitioner also cites to the DHHR employee's testimony that the children's medical needs were met, while ignoring the fact that the evidence established that A.W. had to undergo extensive dental work because L.S. allowed her oral health to deteriorate. Petitioner further ignores that the record clearly establishes that L.S. did not provide appropriate supervision for the children, given that he engaged in inappropriate discipline of at least one of the children. As such, it is clear that petitioner neglected the children by her total failure to provide for them, and the fact that the circuit court may have based its adjudication, in part, upon her extensive substance abuse that led to this neglect does not entitle her to relief.

Further, the conditions of neglect upon which petitioner was adjudicated clearly existed at the time of the petition's filing as required by the applicable statutes and our prior holdings, contrary to petitioner's argument that they did not. As we have explained,

"[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is

5

obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Again, the evidence is uncontroverted that, at the time the petition was filed, petitioner neglected the children by leaving them in L.S.'s care and failing to provide them with necessary support of any kind. As such, it cannot be said that the DHHR failed to satisfy this burden. Although petitioner argues that "because there are no allegations of drug use or abuse in the [p]etition . . . [,] the conditions did not exist at the time of the filing," she grossly misinterprets the controlling authority. As the evidence clearly shows, petitioner did, in fact, suffer from severe substance abuse at the time the petition was filed. Regardless, petitioner was adjudicated for her neglect of the children, so it is unnecessary to resolve the specific issue of the guardian's failure to include allegations of substance abuse in the petition.

Petitioner also argues that the circuit court erred in adjudicating her of abandonment because there was insufficient evidence to substantiate that allegation. This argument is easily resolved, however, because the circuit court's adjudicatory order makes no such finding. Indeed, as set forth above, the circuit court adjudicated petitioner of neglecting the children upon her inability to provide for their needs. As such, petitioner's specific arguments in support of this assignment of error need not be addressed because the record shows that the circuit court did not adjudicate her of abandonment.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton