**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**


*In re* **C.L.-1 and L.L.**

**No. 20-0881** (Monongalia County 18-JA-14 and 18-JA-15)


**MEMORANDUM DECISION**


Petitioner Mother C.K.., by counsel Stephanie Nethken, appeals the Circuit Court of Monongalia County's October 8, 2020, order terminating her parental rights to C.L.-1 and L.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Diana D. Michael, filed a response on the children's behalf in support of the circuit court's order. Respondent intervening foster parents, K.G. and A.G., by counsel Kristen F. Antolini, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the instant proceedings, the DHHR filed a child abuse and neglect petition in 2014 and removed four children (C.L.-1, L.L., and two older children) from petitioner's care due to allegations of substance abuse and domestic violence in the home. Petitioner was later adjudicated as an abusing parent and granted an improvement period. However, the circuit court

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as one of the children and their father share the same initials, we refer to them as C.L.-1 and C.L.-2, respectively, throughout this memorandum decision.

ultimately terminated her custodial rights to all four children in 2015, after she failed to remedy her substance abuse. C.L.-1 and L.L. were placed in the custody of their father, C.L.-2. Two children who are not at issue in this appeal were placed with their paternal grandfather in a permanent legal guardianship pursuant to West Virginia Code § 49-4-604(c)(5).

In March of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner had been providing care for all four children and had tested positive for controlled substances in the course of her criminal probation.[2] The DHHR also alleged that C.L.-2 had been abusing controlled substances and was incarcerated. The DHHR removed the children from their respective placements and placed them in foster care.

In April of 2018, the circuit court adjudicated petitioner as an abusing parent, and, in May of 2018, it granted petitioner's motion for a post-adjudicatory improvement period, which was extended in August of 2018. Petitioner moved to modify the disposition of her prior abuse and neglect case in September of 2018, arguing that she had ceased her substance abuse and had experienced a substantial change in circumstances resulting from the services that she received during the improvement period. Following petitioner's motion, the circuit court found that petitioner had been incorrectly designated as an adult respondent in the petition and reassigned her as an interested party. It ordered the DHHR to continue to provide services to petitioner and ordered petitioner to file her motion to modify disposition in the prior case.

In April of 2019, the circuit court heard evidence related to petitioner's motion to modify disposition and, without objection from the parties, granted the motion. Notably, petitioner and C.L.-2 were living together at this time. C.L.-2 had been released from incarceration and was participating in services. The circuit court found that an additional three-month post-dispositional improvement period was warranted for C.L.-2 and so ordered. It also ordered a gradual transition of C.L.-1 and L.L. into the home of petitioner and C.L.-2, with an order that the parents continue pre-established therapy for C.L.-1. C.L.-1 and L.L. were placed in the full-time care of petitioner and C.L.-2 in May of 2019.

In June of 2019, the DHHR informed the circuit court of a domestic violence incident between petitioner and C.L.-2, which resulted in his incarceration. Petitioner obtained a domestic violence protective order, ended her relationship with C.L.-2, and the children remained in her care. Petitioner also consented to the guardianship of her two older children in the care of the paternal grandfather. Those children were dismissed from the proceedings. The circuit court granted the DHHR leave to amend the abuse and neglect petition to include new allegations of domestic violence against C.L.-2.

In September of 2019, the DHHR filed an amended petition, which also included allegations against petitioner. The DHHR alleged that petitioner's criminal probation officer received an anonymous tip that petitioner had been using her children's urine to pass her drug

---

[2]According to the record, petitioner was charged with and convicted of conspiracy after she and C.L.-2 conspired to steal and sell a "RugDoctor."

screening tests. The probation officer conducted a random drug screening test, and petitioner tested positive for cocaine and benzodiazepine, which she admitted to using. According to the DHHR, the probation officer discovered a series of texts from petitioner to another individual who had asked for urine. During these texts, petitioner responded that "I'm gonna try in the [A.M.] from the boys so I'll let ya know about pee." The DHHR also alleged that petitioner's scheduled drug screenings were positive for her prescribed buprenorphine and noted its concern that the urine allegedly "produced from her children tested positive for buprenorphine." The DHHR interviewed C.L.-1, who disclosed that petitioner had been "acting crazy," particularly after she "goes to her friends' homes." C.L.-1 disclosed that petitioner hit him in the "privates" with a paddle and indicated his "privates" were his genitals. He reported that he felt unsafe in his home and that petitioner "want[ed] to hurt [him] because she can." Finally, the DHHR alleged that the children's cellphones had "saved searches" for the phrases "cocaine drug test," "how to detox from crack," "how to get crack out of your system," and "how long does crack stay." Petitioner did not appear for the preliminary hearing on the amended petition but was represented by counsel. Following the testimony of a DHHR worker, the circuit court ratified the removal of C.L.-1 and L.L. from petitioner's care and their placement with respondent intervenor foster parents.[3]

The circuit court held the adjudicatory hearing in October of 2019. Petitioner did not appear but was represented by counsel. Upon the motion of the DHHR, the circuit court took judicial notice of the evidence presented at the preliminary hearing. Petitioner presented no evidence. Ultimately, the circuit court adjudicated petitioner as abusing parent. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period in February of 2020, alleging that she had already completed a twenty-eight-day substance abuse treatment program.

The circuit court held a series of dispositional hearings in February, March, and September of 2020.[4] The DHHR presented testimony from C.L.-1's therapist in February of 2020. The therapist testified that her appointments with C.L.-1 were very sporadic while the child was in petitioner's care. During those appointments, the therapist described C.L.-1 as hyperactive, very emotional, and "completely out of control." The therapist believed C.L.-1's actions were consistent with severe trauma. On one occasion, the child described having to protect petitioner from his father, C.L.-2., and, while overcome with emotion, he destroyed one of his own toys, for which he later expressed remorse and cried. The therapist stated that after C.L.-1 was removed from petitioner's care, he "was a whole new kid." The therapist testified that the child no longer physically lashed out at other children and was developmentally on par with his peers. She opined that C.L.-1 should remain in his current placement so as to not risk his newfound stability. Next, the DHHR called petitioner's criminal probation officer who testified

---

[3]Petitioner's two older children remained in the custody of their guardian and were not included as infant respondents in the amended petition.

[4]It appears from the record that the COVID-19 pandemic and resulting judicial emergency caused an unavoidable delay in the proceedings.

that she began supervising petitioner's two-year term of probation in December of 2017. The probation officer explained that she had received an anonymous tip that the children disclosed petitioner was using their urine to pass drug screening, as referenced in the amended petition. The officer clarified that petitioner was prescribed Suboxone and that the urine she provided for drug screens was always positive for that substance. However, when the officer initiated a random drug screening following the anonymous tip, petitioner was positive for cocaine, benzodiazepine, in addition to her prescribed Suboxone. The probation officer also testified regarding text messages between petitioner and another individual wherein she offered this person "clean pee." The probation officer stated that after September of 2019, petitioner ceased communication with her. Petitioner was eventually sanctioned and incarcerated in January of 2020 and then released from probation.

At the March of 2020 hearing, petitioner testified that she had completed a twenty-eight-day substance abuse treatment program and continued to participate in a medically assisted substance abuse treatment program where she was prescribed Suboxone. She denied C.L.-1's allegations that she hit the child in the genitals with a paddle and stated it was hard to believe that C.L.-1 did not want to see her. In response to the text messages related to the children's urine, petitioner stated that she was using the "talk-to-text" function on her cellphone and that it was poorly transcribed. Petitioner did not appear for the September of 2020 dispositional hearing, although counsel proffered that she was aware of the time and date of the hearing. During the September hearing, counsel proffered that petitioner was participating in a substance abuse treatment program and drug screening as a component of that program. However, no evidence was presented regarding these allegations.

Finally, the DHHR admitted a forensic evaluation of C.L.-1 performed in May of 2020, wherein the evaluator opined that C.L.-1 was suffering from emotional distress and a lack of connection with his family members and peers. The evaluator believed that C.L.-1 required permanency and predictability, that the "[m]ultiple removals and living situations have taken a toll on him," and that he could not "endure being removed from a family one more time." The evaluator implored that "whatever [was] decided [as a result of the proceedings must] be a permanent situation." C.L.-1 also expressed a desire to see petitioner, and the evaluator cautioned that the child "was not prepared to sever contact with [her] at this point, and doing so without preparation could cause long term wounds for [C.L.-1]."

Ultimately, the circuit court found that petitioner had not remediated the conditions that led to the filing of the petition, which included neglect, parental substance abuse, and domestic violence in the home. The court found that petitioner had exhibited a long history of substance abuse with repeated relapse and that since the first petition was filed in 2014, she had not demonstrated an ability or willingness to maintain sobriety. The circuit court further found that petitioner had not adequately addressed the concerns of domestic violence and that she failed to accept responsibility for the effects of domestic violence on the children. Finally, the circuit court found that the children had suffered long-term consequences from their exposure to repeated incidents of substance abuse and domestic violence, as evidenced by the testimony of C.L.-1's therapist and his forensic evaluator. The court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse and that termination of her parental rights was necessary for the welfare of the children. Accordingly, the

4

circuit court terminated petitioner's parental rights by its October 8, 2020, order. Petitioner now appeals that order.[5]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, an improvement period shall be allowed unless the court finds "compelling circumstances" to justify a denial. *See* Syl. Pt. 3, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1980). She argues that the circuit court failed to set forth compelling circumstances that would warrant the denial of an improvement period. Further, petitioner argues that the evidence showed she was willing to fully participate in the terms of an improvement period and had already taken steps to remedy to substance abuse by participating in a twenty-eight-day substance abuse treatment program. Upon our review, we find no error below.

Initially, we note that petitioner's reliance on the "compelling circumstances" standard for denying an improvement period is misplaced. This standard was "based upon language in a former version of [West Virginia Code § 49-4-610], prior to the 1996 amendments, which stated that a court was to provide an improvement period unless compelling circumstances indicated otherwise." *In re Charity H.*, 215 W. Va. 208, 216 n.11, 599 S.E.2d 631, 639 n.11 (2004). However, "[w]ith the deletion of such language from the statute, the compelling circumstance concept is no longer relevant to this Court's investigation." *Id*. The current statute requires that the parent "demonstrate[], by clear and convincing evidence, that [he or she is] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an

---

[5]The parental rights of the father were terminated below. According to the parties, the permanency plan for the children is adoption by the intervening foster parents.

improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Additionally, the children were in foster care for a significant period of time during the proceedings below. Pursuant to West Virginia Code § 49-4-610(9),

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in the paragraph.

In this case, the children were removed from C.L.-2's care in April of 2018 and placed into foster care. They remained in that placement until May of 2019 (thirteen months) at which time the circuit court granted petitioner's motion to modify her disposition and the DHHR determined that the children could be returned to the joint care of petitioner and C.L.-2. In July of 2019, C.L.-2 perpetrated domestic violence on petitioner in the children's presence, which led to the DHHR filing an amended petition. The children remained in petitioner's care until September of 2019, when the DHHR discovered that petitioner had relapsed to substance abuse, and they were again placed into foster care. By January of 2020, when the first dispositional hearing was held, the children had been in foster care sixteen of the most recent twenty-two months. Accordingly, the circuit court was required to find compelling circumstances that such an improvement period was in the children's best interests.

Upon the record provided, we find the circuit court did not err in denying petitioner's motion for an improvement period because the compelling circumstances required by West Virginia Code § 49-4-610(9) were not present. In this case, petitioner demonstrated a substantial change in the conditions of abuse and neglect by remaining drug free and compliant with services from April of 2018 through May of 2019. However, that progress was clearly undone by September of 2019. The conditions of petitioner's first termination of her custodial rights, most notably her substance abuse, had returned, and it was again necessary to remove the children from petitioner's care. More concerning, C.L.-1 disclosed that petitioner struck him in the genitals with a paddle and stated that he did not feel safe in her home. While petitioner acknowledged her substance abuse as a mistake, she denied that she abused C.L.-1 in this manner. This denial was a compelling reason to deny petitioner an improvement period, as we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Most importantly, petitioner's inability to provide a stable home life for C.L.-1 had taken a toll on the child, and both his therapist and forensic evaluator agreed that ultimate resolution in the abuse and neglect proceedings needed to provide the child permanent stability. Petitioner had already demonstrated an inability to make a sustainable change in her parenting during the 2014-15 abuse and neglect proceedings and again in these proceedings. Thus, the compelling circumstances required to grant an improvement period are not apparent from the record. Rather, it appears that C.L.-1's best interests were served by having a permanent placement that was not subject to another potential upheaval. Accordingly, we find the circuit court did not err in denying petitioner's motion for an improvement period.

This evidence also supports the termination of petitioner's parental rights. Petitioner argues that she completed a substance abuse treatment program after her relapse in September of 2019 and exhibited an ability to remedy the conditions of abuse and neglect, but we find this argument unpersuasive in light of petitioner's repeated attempts and failures to achieve long-term sobriety. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Notably, the West Virginia Code provides that such conditions exist when

> [t]he abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

W. Va. Code § 49-4-604(d)(1). Here, petitioner attempted and failed to remedy the conditions of abuse and neglect after multiple opportunities and services provided by the DHHR. The circuit court found that petitioner had failed to demonstrate an ability to maintain long-term sobriety and had failed to accept responsibility for the effect that the domestic violence in the home had on the children. Further, termination of petitioner's parental rights was in the children's best interests as the evidence showed that the children had suffered developmentally from unstable placements. We have held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

7

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Although we acknowledge that petitioner completed a substance abuse treatment program in late 2019, she presented no evidence that she continued to remain substance free thereafter. The circuit court was presented with a long history of substance abuse, followed by abstinence, followed again by substance abuse. The children, in particular C.L.-1 (now age seven), have suffered as a result of petitioner's inability to maintain sobriety and their exposure to domestic violence while in her care. Based on petitioner's inability to maintain sobriety throughout these proceedings, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**DISSENTING:**
Justice John A. Hutchison

I would set for Rule 19 oral argument.

8