**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.T.**

**No. 21-0013** (Preston County 20-JA-38)

**MEMORANDUM DECISION**

Petitioner Mother M.T., by counsel Stephanie Nethken, appeals the Circuit Court of Preston County's December 9, 2020, order terminating her parental and custodial rights to E.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Hilary M. Bright, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her custodial and parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2020, the DHHR filed a child abuse and neglect petition, alleging that E.T.'s father had sexually abused the child's sibling, K.T., while she was a minor and living in the family home.[2] The DHHR alleged that the father admitted in January of 2020 to sexually abusing K.T. throughout her life, and petitioner was aware of his admissions. The DHHR alleged that, despite this knowledge, petitioner continued to allow the father to live with her and E.T. After

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]At the time of the petition's filing, K.T. had since reached the age of majority. Therefore, she was not included as an infant respondent in the child abuse and neglect petition.

the father was arrested in April of 2020, petitioner posted bond for him and continued to allow the father to reside in the home. According to the DHHR, petitioner did not desire to pursue charges for the father's sexual abuse of her daughter, K.T., and indicated that the "family wants to just get on with their lives." Petitioner waived her preliminary hearing.

The circuit court held the first adjudicatory hearing in June of 2020. Petitioner moved for a preadjudicatory improvement period on the basis that she was not aware of the sexual abuse that the father had perpetrated on K.T. The circuit court denied the motion, noting that the police report charging the father with sexual abuse indicated that K.T. had informed petitioner of the abuse. The DHHR presented the testimony of a Child Protective Services ("CPS") worker that was consistent with the allegations in the petition. The CPS worker testified that petitioner's failure to remove the father from the home after she learned that he had sexually abused K.T. demonstrated impaired parental judgment.

At a second adjudicatory hearing in June of 2020, petitioner testified that the father had admitted to her that he sexually abused K.T. and, following that admission, she continued to reside with him and her child, E.T. Petitioner asserted that she never left E.T. alone with the father after the allegations came to light. In her opinion, it was in E.T.'s best interest to remain in the home with the father because she could protect E.T. from the father and E.T. could spend more time with the father before he was sent to prison. She insisted that E.T. was always with her or his grandparents, so she knew that E.T. was safe from the father's conduct. She further asserted that she slept in the same room with E.T. to ensure his protection. During her testimony, petitioner refused to admit that she had neglected E.T. by continuing to expose him to the father. Petitioner testified that she removed the father from the home after the child abuse and neglect petition was filed.

The circuit court held a third and final adjudicatory hearing in September of 2020, and petitioner again denied that her actions were neglectful. Petitioner explained that she, the father, and the children had lived with her parents for the children's entire lives. She further explained that she informed her parents of the father's admissions in January of 2020, although she did not have any specific discussions with her parents about supervising E.T. She also clarified that K.T. was living in that home with her parents when she was abused as well. Petitioner noted that she was fourteen when the father (then age nineteen) impregnated her with her oldest son, T.C., and she was living in that home with her parents at that time. Petitioner's adult son, T.C., testified that K.T. disclosed that she had been sexually abused by the father in January of 2020, and he spoke with the father and petitioner thereafter. He also testified that K.T. lived with him after the father was released on bond. T.C. testified that he was not concerned for the safety of E.T. after the father admitted to sexually abusing K.T. because E.T. was supervised by petitioner or the grandparents while in the home with the father. Finally, the grandfather, B.C., testified that he was not aware that the father had admitted to sexually abusing K.T. until he was arrested in April of 2020. He stated that no one had advised him not to leave E.T. unsupervised with the father and noted that he would have taken additional precautions had he known about the father's admissions. Further, B.C. admitted that there were times that E.T. was unsupervised in the home. Finally, B.C. testified that petitioner and the father slept in a room together and E.T. slept alone in his own room. Petitioner called K.T. to testify, but she was too distraught to testify and was ultimately excused.

2

After a brief recess, petitioner proffered that hearing the testimony of her father, B.C., caused her to realize that bringing the father back into the home with E.T. was neglectful. Petitioner offered to stipulate that she failed to protect E.T. The DHHR and guardian objected to the stipulation, arguing that petitioner was only willing to stipulate because "it was all but clear" that she was going to be adjudicated as an abusing parent. Ultimately, the circuit court denied petitioner's motion to stipulate. In so doing, it reasoned that petitioner expected B.C. to provide different testimony. The court noted on the record that petitioner reacted to T.C.'s testimony by making faces and shaking her head in an attempt to affect his testimony. The circuit court held that neither petitioner nor T.C. provided credible testimony. Finally, the circuit court found that petitioner was an abusing parent as she had failed to protect E.T.

The circuit court held three dispositional hearings in October of 2020. Petitioner moved for a post-adjudicatory improvement period and testified that she would participate in any recommended services. She also testified that she filed a petition to divorce the father a few days prior to the first dispositional hearing, withdrew as his bond surety, and ended her relationship with him. Petitioner stated that she failed to protect E.T. from the father and that she realized now that her actions were neglectful. The CPS worker testified that the DHHR was recommending termination of petitioner's parental rights due to her failure to acknowledge the abuse and neglect of E.T. The CPS worker further testified that services or an improvement period would not be beneficial because of petitioner's failure to acknowledge the abuse.

Ultimately, the circuit court agreed with the DHHR that petitioner's failure to acknowledge the abuse and neglect had rendered rehabilitative services ineffective. The court noted that petitioner had not requested any services or acknowledged any parental shortcomings "until it was clear that the [c]ourt was going to adjudge her as abus[ing] or neglectful." The circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that allowing E.T. to return to petitioner's home was contrary to the child's best interests. Accordingly, the circuit court terminated petitioner's custodial and parental rights by its December 9, 2020, order. Petitioner now appeals this order.[3]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire

---

[3]The father's custodial and parental rights were also terminated below. According to the parties, the permanency plan for E.T. is adoption in his current foster placement.

evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, an improvement period shall be allowed unless the court finds "compelling circumstances" to justify a denial. *See* Syl. Pt. 3, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1981). Petitioner asserts that the circuit court failed to state what compelling circumstances warranted the denial of her improvement period. She argues that her testimony proved that she was likely to fully participate in an improvement period and that she had acknowledged the conditions of abuse and neglect that had given rise to the filing of the petition. She further emphasizes that she filed a petition to divorce the father and withdrew as a surety on his bond, which demonstrated that she had ended her relationship with him and was likely to improve her parenting. Upon our review, we find that petitioner is entitled to no relief.

Initially, we note that petitioner's reliance on the "compelling circumstances" standard for denying an improvement period is misplaced. This standard was "based upon language in a former version of [West Virginia Code § 49-4-610], prior to the 1996 amendments, which stated that a court was to provide an improvement period unless compelling circumstances indicated otherwise." *In re Charity H.*, 215 W. Va. 208, 216 n.11, 599 S.E.2d 631, 639 n.11 (2004). However, "[w]ith the deletion of such language from the statute, the compelling circumstance concept is no longer relevant to this Court's investigation." *Id*. The current statute requires that the parent "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Here, we find that petitioner did not meet her burden of proof to be granted a post-adjudicatory improvement period. Although petitioner testified that she would participate in services, she presented no evidence that she sought any services to remedy the conditions of abuse and neglect. Furthermore, the circuit court found that petitioner had provided incredible testimony during the adjudicatory hearings as it pertained to the timeline of the sexual abuse disclosures and her actions thereafter. This Court has held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As the circuit court determined that petitioner was a less than credible witness, we find no error in it designating an appropriate weight to her testimony.

Importantly, petitioner refused to acknowledge that her actions were neglectful throughout the majority of these proceedings. This Court has repeatedly held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner was questioned directly as to whether she had neglected E.T. at two different adjudicatory hearings and she flatly denied the accusation. As noted by the circuit court, petitioner did not experience a change in her opinion until the grandfather, B.C., testified. The circuit court inferred that petitioner had expected B.C. "to lie to the Court" and it was only after his testimony that she realized that she needed to admit to her shortcomings as a parent. Although petitioner later admitted that her actions were neglectful, the circuit court ultimately found that petitioner "was never able to comprehend that she did anything wrong or that her conduct was abus[ing] or neglectful." Accordingly, the court determined that services would be ineffective, and an improvement period would have been an exercise in futility. We find no clear error in the circuit court's findings and affirm the denial of petitioner's motion for an improvement period.

Petitioner also argues that the circuit court erred in terminating her custodial and parental rights. She asserts that she demonstrated an ability to solve the conditions of abuse and neglect on her own by filing for a divorce from the father, withdrawing as his bond surety, and removing the father from the home. Further, she expressed a willingness to participate in services and improve her parenting. We find that she is entitled to no relief on appeal.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's custodial and parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) sets forth that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As set forth above, petitioner's failure to acknowledge the conditions at issue have rendered them uncorrectable. This Court has found no error in the circuit court's determination that petitioner "was never able to comprehend that she did anything wrong or that her conduct was abus[ing] or neglectful," and, accordingly, its finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future is supported by the record. Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood

under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's custodial and parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 9, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton