**STATE OF WEST VIRGINIA**

**FILED**

**February 13, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In re E.A.-1, J.A., Jr., and E.A.-2**

**No. 22-688** (Jackson County 21-JA-81, 21-JA-82, and 21-JA-83)

**MEMORANDUM DECISION**

The petitioner, J.A.G.[1] appeals the July 25, 2022, order of the Circuit Court of Jackson County terminating his parental rights to his children, E.A.-1, J.A., Jr., and E.A.-2.[2] He contends that the circuit court committed several errors during the proceedings below and failed to make the necessary findings to adjudicate him as an abusing parent and to terminate his parental rights. Having considered the parties' briefs and oral arguments, the submitted record, and pertinent authorities, we find no substantial question of law and no prejudicial error. Accordingly, a memorandum decision affirming the circuit court's order is appropriate pursuant to Rule 21(c) of the West Virginia Rules of Appellate Procedure.

This abuse and neglect case commenced on July 6, 2021, when the respondent, the West Virginia Department of Human Services ("DHS"), filed a petition contending that the petitioner sexually abused his daughter, E.A.-1. The petition specifically alleged:

---

[1] The petitioner is represented by William B. Summers, Esq. Attorney General Patrick Morrisey, Assistant Solicitor General Grant A. Newman, and Assistant Attorney General Lee Niezgoda represent the West Virginia Department of Human Services. Nic Dalton, Esq., is the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials instead of full names to protect the identities of the juveniles involved in this case. *See* W. Va. R. App. Proc. 40(e). Two of the children have the same initials, and, therefore, we refer to them as E.A.-1 and E.A.-2.

[E.A.-1], an eleven (11) year old child in the home has disclosed to her mother, [N.L.], on June 25, 2021 that on June 24, 2021 she awoke to her father, [J.A.G.], laying in bed with her. The child stated that while in her bed, [J.A.G.] put his hand under her shirt and was flipping her bra and started to pull on her shorts. When [J.A.G.] realized that the child was awake, he told her to go back to sleep and left the room. The child was at [J.A.G.'s] home for a parent/child visitation. The child sent a text to her mother stating that she was scared and her mother picked her up immediately.[3]

(Footnote added).

At the preliminary hearing held on August 6, 2021, the DHS and the guardian ad litem presented testimony from three witnesses. First, a deputy from the Jackson County Sheriff's Office testified that she had investigated the matter after N.L. made a police report and that the petitioner denied the allegations when she questioned him, stating he had just covered his daughter with a blanket. N.L. then testified about E.A.-1 texting her to come and pick her up in the early morning hours of June 25, 2021. Finally, Maureen Runyon, coordinator of the Child's Advocacy Center at Women's and Children's Hospital in Charleston, testified that she interviewed E.A.-1 on July 12, 2021. Ms. Runyon relayed E.A.-1's account of what happened on June 24, 2021. She testified that,

[E.A.-1] explained to me that she was in bed and that her father came in, and that he laid down beside her, and it made her uncomfortable. She could feel him—she used the word "cuffing." She said that he had put his hand up her shirt and pulled on her bra strap. She was laying on her stomach, so this was up her shirt from behind her back—and that he had pulled, like, the waist of her pants—had pulled her—had pulled them out, and then cuffed her butt with his hand on top of her clothing.

. . . .

She said that she wanted what was happening to stop, and so she kind of raised up quickly like she had awakened and that her father just told her to go back to sleep, and he left her room. He got up quickly from the bed, told her to go back to sleep, and left the room.

---

[3] The petitioner and N.L. are divorced. Prior to the proceedings in this case, they had a shared custody arrangement with the children living with the petitioner Monday through Thursday and then staying with N.L. Friday through Sunday. N.L. was named as a non-abusing respondent in the abuse and neglect petition, and the permanency plan is for the children to remain in her sole custody.

Ms. Runyon's interview of E.A.-1 was recorded, and the circuit court admitted the recording into evidence upon motion of the DHS. Based upon all this evidence, the circuit court ratified the petition and scheduled an adjudicatory hearing.

The parties appeared for the adjudicatory hearing on October 7, 2021. Over the petitioner's objection, the circuit court granted a motion made by the DHS for the court to take judicial notice of the testimony given at the preliminary hearing. The petitioner then testified on his own behalf denying the allegations set forth in the petition and claiming that he just covered his daughter with a blanket. The petitioner stated that he and E.A.-1 had "a little argument" earlier in the evening because he had bought a toy for his youngest son and that he went into her room to check on her. When asked on cross-examination about E.A.-1's contention that he had laid down beside her, the petitioner testified:

> I just put my head down, just—when I covered her up, I just rub hers back, paw (phonetic) hers butt and just put my head down, like that and just leave. I just—but before I leave, I just see cookies at hers foot. I just grab the cookies and just walk away. I just went right to my bedroom, because I knew the next day that I get up early.

On November 12, 2021, the circuit court entered its adjudicatory order, finding the petitioner to be an abusing parent. The court found that "there is evidence for this Court to conclude that [the petitioner's] touching of [E.A.-1's] back and buttocks was for the purpose of his own sexual gratification. While the evidence appears to support a finding of one isolated incident, the evidence still reveals inappropriate sexual contact . . . the testimony of [E.A.-1] indicated this to be an unusual pattern of behavior whereby [the petitioner] touched her back, including her bra strap, pulled on her shorts so he could see her naked buttocks, and touched the buttocks of a pre-teenaged girl while she was thought to be sleeping."

Upon entry of the adjudicatory order, the petitioner sought an improvement period which was subsequently denied. Thereafter, the DHS filed a motion seeking termination of the petitioner's parental rights. After two continuances, the disposition hearing was held on May 9, 2022.[4] At the beginning of the hearing, the petitioner sought to continue the matter again, arguing

---

[4] The first scheduled disposition hearing was continued because the petitioner was ill. The next hearing was continued because the petitioner sought to investigate potential exculpatory evidence. At the beginning of the third scheduled hearing on May 9, 2022, the petitioner's attorney advised the circuit court that with regard to the alleged exculpatory evidence,

> [I]nformation came to me that the child here had recanted her allegation against her father and had spoken to friends at school about that. We had continued the dispositional hearing to allow me to explore that issue, and I did, and spoke to the girls, the student, who brought this information forward. I spoke to her father on two occasions. He never would allow me to speak to the child, and he had told me that he would make arrangements to bring his daughter to my office so I could interview her, and he never did that.

3

the case should be continued until such time that he was indicted, noting that although he had been criminally charged for sexual abuse by a parent, he had not yet been indicted. The circuit court denied the motion and then heard testimony from the DHS's Child Protective Services case manager who recommended termination of the petitioner's parental rights. The case manager explained that in sexual abuse cases, the DHS does not seek to reunify the family. The circuit court then terminated the petitioner's parental rights by order entered on July 25, 2022, finding no reasonable likelihood that conditions of abuse and neglect could be corrected in the near future. This appeal followed.

Our standard of review for abuse and neglect cases is well established. In syllabus point one of *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996), this Court held:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With this standard in mind, we consider the petitioner's assignments of error.

The petitioner first contends that the circuit court erred by not complying with the timeframes for hearings as set forth in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. However, he also argues that the circuit court should have given him additional time to investigate potential exculpatory evidence. The record reflects that the continuances that were granted by the circuit court were upon motions of the petitioner. He sought a continuance before the preliminary hearing and three continuances of the disposition hearing, one of which was granted to provide him additional time to investigate potential exculpatory evidence. Notably, at the beginning of the May 9, 2022, disposition hearing, the petitioner's counsel explained to the court the nature of the alleged exculpatory evidence but did not seek yet another continuance for that reason. Instead, the petitioner sought to further delay the disposition hearing until such time that he was indicted on a criminal charge. The circuit court did not err in denying that motion for a continuance as Rule 5 of the West Virginia Rules of Procedure for Child

---

The DHS and guardian ad litem then informed the circuit court that they each investigated the alleged recantation and that it was denied by both the child to whom the recantation was supposedly made and E.A.-1.

4

Abuse and Neglect Proceedings provides: "Under no circumstances shall a civil child abuse and neglect proceeding be delayed pending the initiation, investigation, prosecution or resolution of any other proceeding, including, but not limited to, criminal proceedings." Having carefully reviewed the record, we find that at most there was a seventeen-day delay between the adjudicatory hearing and the circuit court's first scheduled disposition hearing,[5] which was then continued upon the petitioner's motion. The petitioner has not come forward with any evidence to show how he was prejudiced by this delay. While we have long expressed disapproval of "unjustified procedural delays"[6] in abuse and neglect cases, in this instance, we are unable to find that the circuit court "substantially disregarded or frustrated the abuse and neglect process"[7] so as to afford the petitioner any relief, especially since the disposition hearing was further continued twice upon motions made by the petitioner.

The petitioner next argues that the circuit court erred by denying the motion he made at the preliminary hearing to dismiss the abuse and neglect petition on the basis that it failed to set forth sufficient facts to support a finding of sexual abuse. Having carefully reviewed the petition, we find no merit to this argument. As set forth above, the petition provided the specific details of the disclosure made by E.A.-1 to N.L. In addition, the petition alleged that "a child in the home has been sexually abused pursuant to W.Va. Code § 49-1-201(1)(B)." This Court has previously held that "[i]f the allegations of fact in a child neglect petition are sufficiently specific to inform the custodian of the infants of the basis upon which the petition is brought, and thus afford a reasonable opportunity to prepare a rebuttal, the child neglect petition is legally sufficient." Syl. Pt. 1, *State v. Scritchfield*, 167 W. Va. 683, 280 S.E.2d 315 (1981). Here, we find that the petition contained the requisite specificity to give the petitioner a reasonable opportunity to prepare a rebuttal and, therefore, was legally sufficient.

The petitioner also challenges the circuit court's decision at the adjudicatory stage of the proceedings to grant the DHS's motion to take judicial notice of the testimony given at the

---

[5] Rule 32(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that the disposition hearing shall commence within forty-five days of entry of the adjudicatory order unless an improvement period is granted. Here, the adjudicatory order was entered on November 12, 2021, and the disposition hearing was initially scheduled for January 13, 2022. There is no explanation in the record regarding why the hearing was not scheduled within the forty-five-day timeframe.

[6] *See* Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

[7] *See* Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001) ("Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.").

preliminary hearing. The petitioner argues that circuit court erred in that regard because the burden of proof at the adjudicatory hearing is clear and convincing evidence as opposed to probable cause, the lower standard of proof that applies at the preliminary stage of the proceedings. Upon review, we find that the petitioner has misconstrued the effect of the circuit court's granting of the DHS's motion. In this circumstance, the circuit court does not accept the prior testimony as "true" as the petitioner claims, but rather considers the testimony along with any additional evidence submitted to determine whether the burden of proof applicable at the current stage of the proceedings has been met. For instance, in *In re G.H., P.H. Jr., K.H. and H.H.*, No. 14-302, 2014 WL 4347173 (W. Va. August 29, 2014) (memorandum decision), also an abuse and neglect case, this Court found "no error in the circuit court taking judicial notice of G.H.'s testimony from the [prior] guardianship proceeding." *Id.* at *4. We noted that "the circuit court did proceed on the abuse and neglect petition de novo, the judicial notice of the prior guardianship proceedings notwithstanding" and "afforded [petitioner] the right to recall any of the witnesses [from the prior guardianship proceeding] to cross[-]examine them." *Id.* (additional quotations omitted). Our review of the record in this case shows the same occurred here. While the circuit court took judicial notice of the preliminary hearing testimony, it advised the petitioner that he could call any witnesses he desired in rebuttal. Indeed, the petitioner had the opportunity to call the witnesses who testified at the preliminary hearing to provide additional testimony. Accordingly, we find no merit to this argument.

The petitioner next asserts error because he was not given the opportunity to cross-examine E.A.-1 during the adjudicatory hearing. This Court has held:

> In a child abuse and neglect civil proceeding . . . a party does not have a procedural due process right to confront and cross-examine a child. Under Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

Syl. Pt. 7, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). Here, the record reflects that the petitioner never came forward with any evidence to rebut the presumption. In fact, at the adjudicatory hearing, the petitioner, by counsel, conceded, "We don't get to—We don't get the opportunity, of course, to question her, so the Court, I guess—and the Court has taken judicial notice of the interview she gave Ms. Runyon." Given that the petitioner never sought to elicit testimony from E.A.-1 during the proceedings below, he cannot now claim error in that regard. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.,* 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009).

The petitioner next argues that the circuit court did not make adequate findings to adjudicate him as an abusing parent. Specifically, the petitioner challenges the circuit court's

6

finding that he sexually abused E.A.-1, contending that there was no evidence to support the element of sexual gratification. He also asserts that the circuit court's determination that E.A.-1's testimony was more credible than his was erroneous. Under West Virginia Code § 49-1-201 (2018) "sexual abuse" means "[s]exual intercourse, sexual intrusion, sexual contact, or conduct proscribed by § 61-8C-3 of this code, which a parent, guardian, or custodian engages in, attempts to engage in, or knowingly procures another person to engage in, with a child," and "sexual contact means sexual contact as that term is defined in § 61-8B-1 of this code." West Virginia Code § 61-8B-1 (2007) defines "sexual contact" as

> any intentional touching, either directly or through clothing, of the breasts, buttocks, anus or any part of the sex organs of another person, or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

This Court has previously observed that the element of sexual gratification is a "matter[] which the average juror can understand from the facts surrounding the defendant's conduct at the time the crime was committed based on his [or her] own common sense view of human affairs." *State v. Mitter*, 168 W. Va. 531, 538, 285 S.E.2d 376, 380 (1981).

Here, the circuit court as the trier of fact[8] heard testimony from both the petitioner and the child through her recorded interview. In addition, the circuit court heard the testimony of Ms. Runyon, who was classified as an expert in the field of forensic interviews of children. With respect to the petitioner, the circuit court found:

> [Petitioner] admitted to touching [E.A.-1's] butt. He further admitted being in her room after midnight. [Petitioner] asserted [E.A.-1] and he had gotten into an argument and he was there checking on her in that regard. Such testimony is not supported by the evidence.
>
> [Petitioner] further stated he put a blanket on [E.A.-1] and that is why he touched her buttocks.
>
> The Court does not find this testimony credible. In fact, this Court finds that his testimony reflects various inconsistencies which further supports the minor's interview.

Conversely, the circuit court found "the video interview of [E.A.-1] [is] credible. [E.A.-1] provided great detail regarding [petitioner's] inappropriate behavior . . . [E.A.-1's] testimony did not appear to be a result of coaching or prior preparation."

---

[8] *See In re Emily*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000) ("[I]n the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact.").

This Court has made clear that credibility determinations are for the trier of fact, explaining that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations, and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based on the testimony presented and its credibility determinations, the circuit court ultimately found that there was evidence "to conclude [petitioner's] touching of [E.A.-1's] back and buttocks was for the purpose of his own sexual gratification" and that "based upon the totality of the circumstances in this case, that [petitioner] has abused [E.A.-1]."[9] Under our standard of review, we "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *In the Interest of Tiffany Marie S.*, 196 W. Va. at 180, 470 S.E.2d at 226, syl. pt. 1, in part. Upon review, we find no basis to set aside the circuit court's findings.

The petitioner's final assignment of error is that the circuit court did not make adequate findings to terminate his parental rights. He asserts that the circuit court should have employed a less restrictive alternative disposition instead of accepting the DHS's stated policy of termination in cases of sexual abuse. We find no merit to the petitioner's argument because the DHS's policy in these circumstances is controlled by statute. In that regard, West Virginia Code § 49-4-604(c)(7) (2020), provides, in pertinent part:

> For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines:
>
> (A) The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse, and *sexual abuse*[.]

(Emphasis added). In addition, under West Virginia Code § 49-4-604(d)(5), there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when

---

[9] The circuit court further found that J.A., Jr., and E.A.-2 were abused children because,

> "[w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W. Va. Code, 49-1-3(a) (1994) [now W. Va. Code § 49-1-201 (2017)]." Syllabus point 2, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 3, *In re A.M.*, 243 W. Va. 593, 849 S.E.2d 371 (2020).

[t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]

This Court has held that "'[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.' Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 3, *In re D.P.*, 245 W. Va. 791, 865 S.E.2d 812 (2021). Accordingly, the circuit court did not err in terminating the petitioner's parental rights.

For the reasons set forth above, we affirm the circuit court's July 25, 2022, order.

Affirmed.

**ISSUED:** February 13, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

9